0061

Betty Charles SMITH, Respondent, v. Wallace H. SMITH, Appellant.

(312 S. E. (2d) 560)

Court of Appeals

*James C. Cothran, Jr.*, of *King & Cothran*, Spartanburg, *for appellant.*

*Ben C. Harrison*, of *Burts, Turner, Hammett, Harrison & Rhodes*, Spartanburg, *for respondent.*

Feb. 6, 1984.

GOOLSBY, Judge:

This is a divorce case. The husband, Wallace H. Smith, appeals. The family court granted the wife, Betty Charles Smith, a divorce on the ground of adultery. She was also awarded child support, a division of the marital property, alimony and other incidents of support, and attorney's fees. We affirm in part, reverse in part, and remand certain issues.

Six questions are presented on appeal: (1) Whether the trial judge erred in requiring the husband to support a child in

college? (2) Whether the trial judge erred in awarding the wife a one-half undivided interest in the marital home? (3) Whether the trial judge erred in awarding the wife a thirty percent (30%) interest in bonds purchased by the husband from funds obtained in settlement of a personal injury claim and a loss of consortium claim? (4) Whether the trial judge erred in awarding the wife a twenty percent (20%) interest in the husband's pension fund? (5) Whether the trial judge erred in its division of the personal property? (6) Whether the trial judge erred in awarding the wife alimony, medical insurance coverage, and the exclusive use of the marital home?

The parties were married on July 11, 1951. At the time of the final hearing on December 2, 1980, both parties were forty-eight (48) years old. Neither spouse graduated from high school. The husband completed the ninth grade and the wife finished the eighth.

When they were first married, the wife was employed outside the home. Except for a brief period in 1956, the wife worked until 1959, when the second of three children was born. She never earned more than the minimum wage.

The husband has worked for Smith Wholesale throughout the marriage. He started as a stock boy and, at the time of the final hearing, was a sales consultant.

In 1956, the parties bought the first of two marital homes. Title to the first home was in both names. It was sold in 1966 for Eleven Thousand Five Hundred Dollars ($11,500). The parties bought a second house immediately afterward. All the proceeds from the sale of the first house were applied toward the purchase of the second. Title, however, was placed in the husband's name alone. Only he paid the monthly mortgage. The fair market value of the marital home in the fall of 1980 was Fifty-eight Thousand Five Hundred Dollars ($58,500). The mortgage balance on December 19, 1980, the date of the divorce decree, was Five Thousand Five Hundred Eighty and 96/100 Dollars ($5,580.96). House payments, exclusive of insurance and property taxes, were One Hundred Thirty-six Dollars ($136) monthly.

In addition to real property, the parties accumulated a considerable amount of personal property during the twenty-nine (29) years of their marriage.

At the husband's insistence, the wife stayed home, man-

aged the house and cared for their two surviving children. Ordinarily, she cooked three meals a day. No maid or cook ever assisted her. Each time the wife brought up the topic of her returning to outside employment, the husband urged her to remain at home.

While they were in Myrtle Beach in 1975, the husband was struck by an automobile and was severely injured. During the recovery period, the wife cared for him night and day. She nursed him, ground his food, and attended to all his needs. The husband's claim for personal injury and the wife's claim for loss of consortium were settled for Thirty Thousand Dollars ($30,000). After counsel fees and medical bills were satisfied, the parties were left with Twenty Thousand Dollars ($20,000) between them. The husband invested the money in bonds in his name alone.

Smith Wholesale maintains a pension program for its employees funded by profits in the business. The husband's equity in the profit-sharing plan on December 2, 1980, amounted to approximately Fifty One Thousand Dollars ($51,000).

The marriage began to deteriorate in 1978. Everything fell apart in January 1980, when the wife confirmed her suspicions that her husband was seeing someone else. The husband later admitted his adultery.

In the meanwhile, the wife returned to work. When the final hearing was held, the wife, who has no special job skills or training, worked on the serving line of a cafeteria at the minimum wage. Her employer, unlike Smith Wholesale, does not offer its employees any medical benefits. What health insurance she had was through her husband.

After the parties separated, the wife was in an automobile accident. She sustained serious injury and, as a consequence, is ten percent (10%) disabled.

The parties' youngest child, born in 1960, was a pharmacist student at the University of South Carolina when the final hearing below was conducted.

The husband had a total gross income of One Thousand Eight Hundred Seventy-three Dollars ($1,873) a month and a net monthly income of One Thousand Four Hundred Dollars ($1,400). On the other hand, the wife earned Five Hundred Three and 72/100 Dollars ($503.72) in gross pay each month and netted Four Hundred Nine and 04/100 Dollars ($409.04).

## 1. *Child Support*

Counsel has informed us that the issue regarding the family court's order as to support for a child attending college is now moot; therefore, we will not treat the question.

## 2. *Division of Marital Home*

The husband contends that the family court abused its discretion in awarding the wife a one-half undivided interest in the marital home. Determinations regarding the equitable distribution of marital assets, however, are matters that rest within the sound discretion of the family court. *Simmons v. Simmons*, 275 S. C. 41, 267 S. E. (2d) 427 (1980).

Our Supreme Court in *Parrott v. Parrott*, 278 S. C. 60, 292 S. E. (2d) 182 (1982), recognized that

> where, as here, one spouse has foregone career opportunities at the behest of the primary wage-earning spouse, and throughout a long marriage has remained in the home to rear children and provide a suitable environment for the family, the homemaker spouse shall have upon divorce an equitable interest in the real property acquired by the wage-earner spouse during the marriage.

278 S. C. at 63, 292 S. E. (2d) 182. We find no abuse of discretion, therefore, in the equitable award to the wife of a one-half undivided interest in the marital home especially since the wife also contributed financially to its acquisition when proceeds realized from the sale of an earlier marital home she jointly owned with the husband were used to purchase the property. *Cf. Wilson v. Wilson*, 270 S. C. 216, 241 S. E. (2d) 566 (1978). The portion of the family court's order dividing the marital home is affirmed.

## 3. *Bonds*

The husband argues next that the family court abused its discretion in awarding the wife a thirty percent (30%) interest in bonds worth Twenty Thousand Dollars ($20,000) purchased by him from the net proceeds of funds paid in settlement of his personal injury claim and the wife's loss of consortium claim.

Because the bonds were purchased with joint assets, the wife was clearly entitled to an interest in them. While it may

be true that the wife's loss of consortium claim was not as valuable as the husband's personal injury claim, the wife did nurse and otherwise specially care for the husband during his convalescence. We cannot say, then, that the family court abused its discretion in awarding the wife a thirty percent (30%) interest in the bonds. The award to the wife of a share in the husband's bonds is affirmed.

### 4. Pension Fund

The husband also contends that the family court abused its discretion in awarding the wife a twenty percent (20%) interest in his pension fund.

In *Carter v. Carter*, 277 S. C. 277, 286 S. E. (2d) 139 (1982), the Supreme Court remarked in a footnote:

Although contributions to any pension fund other than civil service retirement funds are not presently at issue, we state for the edification of the bench and bar that these contributions are generally not subject to equitable distribution.

277 S. C. at 279, 286 S. E. (2d) 139.

The evidence reveals that the sole contributor to the pension fund involved in this case was the husband's employer; therefore, the question of whether a retirement fund established either in whole or in part by voluntary personal contributions can be treated as marital property is not before us. Smith Wholesale's retirement fund, as we view it, is similar to the retirement fund maintained for members of the armed forces in that voluntary individual contributions are not required for entitlement. *Cf. McCarty v. McCarty*, 453 U. S. 210, at 213, 101 S. Ct. 2728, at 2731, 69 L. Ed. (2d) 589 at 594 (1981). For that reason, we feel that the family court erred in concluding that the pension fund here constituted a marital asset subject to equitable distribution. *Cf. Haynes v. Haynes*, 279 S. C. 162, 303 S. E. (2d) 429 (1983); *Brown v. Brown*, 279 S. C. 116, 302 S. E. (2d) 860 (1983); *Bugg v. Bugg*, 277 S. C. 270, 286 S. E. (2d) 135 (1982); *Carter v. Carter, supra.* The award to the wife of a share in the husband's pension is reversed.

### 5. *Personal Property*

The husband further contends that the family court abused its discretion in dividing the personal property from the marital home between the parties. The family court divided the personal property from the marital home without receiving evidence as to its value. All the trial judge had before him were lists submitted by the husband and the wife that simply reflected the property desired by each. Neither spouse attempted to evaluate specific property on the lists.

South Carolina Supreme Court decisions apparently set forth four steps which a court should follow in making an equitable distribution of property, whether real or personal. These steps are:

(1) Determine whether both parties have made a material contribution to the acquisition of property and identify the proportionate contribution of each party;
(2) Identify the specific real and personal property that may be apportioned between the parties;
(3) Determine the fair market value of the property; and
(4) Decide on the mechanics of the manner in which the property will be distributed.

*See* Chastain, Henry, & Woodside, *Determination of Property Rights Upon Divorce in South Carolina: An Exploration and Recommendation,* 33 S.C.L. Rev. 227, 241-48 (1981), citing, *inter alia. Baker v. Baker,* 276 S. C. 427, 279 S. E. (2d) 601 (1981); *Stone v. Stone,* 274 S. C. 571, 266 S. E. (2d) 70 (1980); *Taylor v. Taylor,* 267 S. C. 530, 229 S. E. (2d) 852 (1976); *Moyle v. Moyle,* 262 S. C. 308, 204 S. E. (2d) 46 (1974); *see also Hussey v. Hussey,* — S. C. —, 312 S. E. (2d) 267 (S. C. Ct. App. 1984).

In this instance, the trial judge, after a fashion, determined the material contributions of the parties to the acquisition of all marital property and identified both the real and personal property of the marriage before apportioning it between the parties; however, he neglected to determine the personal property's fair market value. Obviously, this omission constitutes reversible error; therefore, the case is remanded for a redetermination of the issue surrounding the distribution of the marital personal property.

### 6. *Alimony, Medical Insurance, Exclusive Use of Marital Home*

Finally, the husband charges that the family court abused its discretion in awarding the wife One Hundred Dollars ($100) a week in alimony and, as incidents of further support, requiring him to provide the wife with medical insurance coverage and granting the wife the exclusive use and possession of the marital home.

In *Whitfield v. Hanks,* 278 S. C. 165, 293 S. E. (2d) 314 (1982), the Supreme Court recognized that an award of possession of the marital home does not represent a division of property but is an incident of support only. *Viz.:*

> The family courts are empowered by statute to include in an order for support a requirement for the providing of necessary shelter. S. C. Code Ann. § 20-7-420(15) (Supp. 1981). The requirement that the supporting party make mortgage payments may be an incident of support. *See Grubbs v. Grubbs,* 272 S. C. 138, 249 S. E. (2d) 747 (1978); *Mays v. Mays,* 267 S. C. 490, 229 S. E. (2d) 725 (1976). A party who is granted possession of a residence as an incident of support does not obtain a vested right to remain in the home for his lifetime. Rather, changed circumstances may necessitate a future change in such a provision. *Taylor v. Taylor,* 271 S. C. 488, 248 S. E. (2d) 315 (1978).

278 S. C. at 166, 293 S. E. (2d) 314.

When making the support award, however, the family court was required to consider a number of factors [*Burgess v. Burgess,* 277 S. C. 283, 286 S. E. (2d) 142 (1982); *Lide v. Lide,* 277 S. C. 155, 283 S. E. (2d) 832 (1981)]; and its determinations regarding support will not be reversed on appeal unless an abuse of discretion is demonstrated. *Smith v. Smith,* 264 S. C. 624, 216 S. E. (2d) 541 (1975).

Here the husband has shown an abuse of discretion. While the alimony award, under the circumstances, appears appropriate, as does the requirement that the husband pay for the wife's medical insurance, the family court should not have granted the wife the exclusive use and possession of the marital home. A court should not give a spouse exclusive possession of a residence as an incident of

support where the evidence reflects that a substantial portion of the other spouse's assets are invested in the home and there is no evidence either that the other spouse has custody of the parties' minor children, that the other spouse is severely handicapped, or that some other special circumstance exists which would warrant such an award. In this instance, the husband has been effectively deprived of the beneficial use of approximately Twenty-six Thousand Five Hundred Dollars ($26,500) and the record does not disclose the existence of any special circumstance to justify the award to her of exclusive possession of the residence. The support award is reversed to the extent that the wife was given exclusive possession of the marital home and the issue of support, including "necessary shelter," is remanded for redetermination.

For the reasons given, the judgment of the trial court is

Affirmed in part, reversed in part, and remanded.

SHAW and CURETON, JJ., concur.