0842

Theodore A. WATSON, Appellant-Respondent v. LeAnn O. WATSON, Respondent-Appellant.

(351 S. E. (2d) 883)

Court of Appeals

*David H. Wilkins* and *John W. Kittredge* of *Wilkins, Wilkins, & Nelson,* Greenville, *for appellant-respondent.*

*J. D. Todd, Jr.,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for respondent-appellant.*

Heard Oct. 15, 1986.

Decided Dec. 15, 1986.

CURETON, Judge:

The husband Theodore A. Watson instituted this action against the wife LeAnn O. Watson for a divorce on the ground of adultery, custody of a minor child and an equitable distribution of marital assets. The wife denied adultery and counterclaimed for alimony, custody of the child, child support, educational expenses for the children and an equitable division of marital assets. At a pendente lite hearing, the wife was awarded pendente lite alimony. At the merits hearing, the trial judge granted the husband a divorce based on the wife's adultery, divided the marital assets, awarded the wife attorney fees, and awarded custody of the minor child to the wife together with child support. The husband appeals the pendente lite order. Both parties appeal provisions of the decree. We affirm in part, reverse in part, modify and remand.

The parties were married in 1951 and three children were born to them. Only one of the children was a minor at the time of the divorce. The first years of their marriage were happy, the husband having received a substantial inheritance from his father, the wife being a former beauty queen from the University of North Dakota, and the husband a bright young physician. In the later years of the marriage the husband drank excessively and is now a recovered alcoholic. The wife provided the matrimonial glue that held the family together. Along with the husband's return to sobriety

and the maturing of the children, the marriage failed. The wife left the marital abode in January 1984. At the time of the divorce hearing, the wife was a medical technologist at North Greenville Hospital, and the husband was a successful physician in the Greenville area earning approximately $183,000.00 per year.

## I.

## HUSBAND'S APPEAL

The husband appeals several aspects of the divorce decree dealing with: (1) the inclusion of his profit sharing plan in the marital estate; (2) the amount of property awarded the wife; (3) the amount of attorney fees awarded the wife; (4) the award of temporary alimony to the wife; and (5) certain evidentiary matters. We will first address those matters regarding the equitable division award.

## A.

The husband owns a ninety-eight percent interest in Piedmont E.N.T., P. A. The other two percent is owned by his partner. The P. A. established a profit sharing plan into which it has deposited up to fifteen percent of the husband's income each year. According to the husband's financial declaration, the plan was worth $304,474.00 at the time of the divorce. As we view the evidence, the funds in the plan were fully vested in the husband but not available for distribution until he reached age sixty. Under cross-examination, the husband acknowledged that as a ninety-eight percent owner of the P. A., he has sole discretion as to the amount of his salary diverted into the plan. The trial judge included the profit sharing plan in the marital estate, noting that "[t]his is a retirement fund established wholly by the voluntary personal contribution of the [husband]."

In the cases of *Bugg v. Bugg*, 277 S. C. 270, 286 S. E. (2d) 135 (1982), *Brown v. Brown*, 279 S. C. 116, 302 S. E. (2d) 860 (1983), and *Haynes v. Haynes*, 279 S. C. 162, 303 S. E. (2d) 429 (1983), our Supreme Court held that military retirement benefits are not subject to equitable distribution. Further, in *Carter v. Carter*, 277 S. C. 277, 286 S. E. (2d) 139 (1982), and *Anderson v. Anderson*, 282 S. C. 162, 318 S. E. (2d) 566 (1984), that Court concluded that civil service retirement was also

not subject to division. Additionally, this Court has held that a spouse's non-contributory retirement account is not marital property subject to equitable distribution. *Johnson v. Johnson*, 288 S. C. 270, 341 S. E. (2d) 811 (Ct. App. 1986); *Smith v. Smith*, 280 S. C. 257, 312 S. E. (2d) 560 (Ct. App. 1984). *Smith* declined, however, to address the divisibility of contributory plans, stating "whether a retirement fund established either in whole or in part by voluntary personal contributions can be treated as marital property is not before us." While a national publication sharply criticized *Smith* as a "bad" decision,[1] we feel that the decision was mandated by the Supreme Court decisions noted above.

We are called upon to decide first whether the husband's retirement plan was a voluntary contributory plan. The complicating factor in this case is the claim of the husband that his plan was a non-contributory plan because his professional association made all contributions to the plan. We reject this argument. It is clear under the facts of this case that the P. A. is the alter ego of the husband. The husband acknowledged that as an owner of ninety-eight percent of the P. A.'s assets, he had sole authority to make decisions regarding the P. A. and to determine what monies went into the fund. Additionally, there is also evidence that he could utilize the retirement account without the consent of a third party. According to the husband's financial declaration, he owes the P. A. over $66,000.00 in loans. We therefore hold that the P. A. was merely a conduit through which the husband paid funds into his profit sharing fund and thus his contributions were both voluntary and contributory. We would note parenthetically that had the husband not elected to place fifteen percent of his salary into his profit sharing plan, those funds would have been available to acquire other marital property.

We next address the unanswered question in *Smith* of whether a contributory retirement plan may be divided upon divorce. We note first that most of the states that have considered this question have made no distinction between contributory and non-contributory plans and have held that the source of the funds was irrele-

---

[1] *See,* Equitable Distribution Journal, Vol. 1, No. 6, June 1984.

18

vant. *See, e.g., Blitt v. Blitt,* 139 N. J. Super. 213, 353 A. (2d) 144 (1976).[2] As we view this subject, the inequitable circumstance that family court judges must be cognizant to address is the situation where a spouse voluntarily diverts family income into essentially a savings or investment account designated as a pension or profit sharing plan, and then, at the time of divorce, claims that the fund is separate property and not subject to division. This type of voluntary contributory fund, in our opinion, must be scrutinized to determine whether equity demands its inclusion in the marital estate. We are not prepared to state, however, that mandatory retirement funds, where an employee is required to contribute as a condition of his or her employment, should be included in equitable division. Therefore, the sole fact that a retirement fund is contributory does not determine whether the fund should be included in the marital estate.[3]

In dealing with the question of whether a plan is ■ marital property, we prefer to leave it to the sound discretion of the family court judges to scrutinize the facts in each case and make a determination whether the plan in a specific case should be included in the marital estate. In an effort to furnish some guidance to the bench and bar on this subject, the following factors should be considered by family court judges in making a determination: (1) whether the pension plan is mandatory for all employees of the spouse's employer; (2) whether the spouse has control over the amount of funds placed in the plan; (3) whether funds in the plan are vested; (4) whether the funds are readily accessible to the spouse; (5) whether the spouse has control over the plan's investments; (6) whether the spouse has personally dealt with the plan, i.e., lent it money or borrowed from it; (7) whether a third party makes independent judgments regarding the spouse's dealings with the plan on such matters as loans from the plan or the use of its property; (8) whether the spouse uses assets of the plan

[2] We would further note that South Carolina's new Equitable Distribution Statute apparently defines marital property in such a way as to include pensions. Section 20-7-473, Code of Laws of South Carolina, 1976.

[3] A contributory plan is one whose corpus is composed of funds in whole or in part from employee contributions.

without adequate compensation for their use; and (9) whether the plan meets the requirements of a qualified plan under provision of the Federal Internal Revenue Code.

Although presumably the civil service retirement plans in both *Carter* and *Anderson* were contributory, it is implicit from the opinions that the employee spouse, unlike the husband here, had no control over the administration of the plans. We therefore find no abuse of discretion in the family court's inclusion of the husband's profit sharing plan in the marital estate.

The trial judge found that the net value of marital assets subject to equitable distribution was $1,085,804.07 and awarded the wife a thirty-two percent interest in them. The husband claims the award was excessive. We find no reversible error.

An expert for the husband valued the wife's direct and indirect contributions to accumulation of the marital estate at fourteen percent, valuing the wife's non-income producing efforts at the minimum hourly wage. The trial judge rejected the expert's valuation of her contributions, noting:

> [T]he court is inclined to disagree with the minimum wage value placed upon the [wife's] indirect contributions under the facts of this case. Also, the number of hours attributable to each party for having (sic) and rearing the children cannot be measured to a mathematical certainty. The support of the wife during the marriage when the [husband] was drinking, gambling, having periods of depression and threatening suicide cannot be valued in hours. Her concern for his drinking problem and instigation of the planned intervention by herself and Dr. Watson's friends to cause [him] to stop drinking cannot be valued quantitatively to a mathematical certainty. This was a marriage of some twenty-three years and ends with the wife being denied alimony or support. This is a marriage where the husband's ability to earn is vastly superior to that of the wife, and the longer the parties are married, the smaller the wife's percentage of direct monetary contributions would be.

The wife's expert testified that it was difficult to place a value on a spouse's indirect contributions to a mathematical certainty. He did not value the wife's contributions. A family court judge has wide discretion to distribute marital property in any equitable manner. *Taylor v. Taylor*, 267 S. C. 530, 229 S. E. (2d) 852 (1976). His judgment will not be disturbed absent an abuse of discretion. *Shaluly v. Shaluly*, 284 S. C. 71, 325 S. E. (2d) 66 (1985). However, "[t]he amount of property awarded to the wife should bear a reasonable relationship to her contributions toward the acquisition of the property or the financial and material success of the family." *Stearns v. Stearns*, 284 S. C. 459, 460, 327 S. E. (2d) 343, 344-45 (1985). Under the facts of this case we cannot say that the amount of property awarded the wife bears no reasonable relationship to her contributions to the acquisition of the marital estate or the financial and material success of the family.

The husband also argues that the decree's language, "[t]his was a marriage of some twenty-three years and ends with the wife being denied alimony," indicates the court impermissibily considered the wife's bar of alimony to increase her share of the marital property. Unlike the court in *Berry v. Berry*, 350 S. E. (2d) 398 (S. C. Ct. App. 1986), the record does not clearly show that the trial judge increased the wife's property award because she was denied alimony. We think the trial judge's further explanation that the "proven allegations of adultery did not occur until after the wife separated from" the husband indicates that he simply did not intend to penalize the wife for her conduct.

Moreover, it is apparent that the court makes the subsequent statement that "the court takes into consideration the fact that the [wife] has been denied alimony and will receive no further support from the [husband]" to support its ruling which permits the husband to pay the equitable distribution award in installments because "it would be in the [wife's] best interest to receive periodic cost (sic) payments from the [husband]." We find the argument without merit.

Finally, the husband contends the charts prepared by the wife's expert witness should not have been allowed into evidence because his counsel did not re-

ceive copies of the charts until the day of trial and certain information on the charts was not relevant to the issue of equitable distribution. The trial judge ruled that counsel for the husband received the charts as soon as wife's counsel received them and that the objectionable information, if not relevant to the equitable division award, was relevant to alimony which was still in dispute at the time. Ordinarily, the admission of evidence is discretionary with the trial judge. *Bridges v. Wyandotte Worsted Co.*, 243 S. C. 1, 132 S. E. (2d) 18 (1963). Further, the husband has not shown where he was prejudiced by the ruling. Finding this argument to be manifestly without merit, we dispose of it under provisions of Section 14-8-250, Code of Laws of South Carolina, 1976.

### B.

The husband next argues that the trial judge erred in awarding the wife an attorney fee of over $15,000.00 when the wife's attorney's affidavit shows that he was entitled to fees of less than $10,000.00. The affidavit contains the statement: "[m]y usual charge for handling domestic matters is $110.00 an hour, and all charges listed above are at my usual rate." The trial judge found that the wife's attorney is "one of the very best Family Court trial attorneys" in the State. Other than the wife's counsel's affidavit, there is no other evidence in the record of the value of her counsel's services.

There can be no doubt that the award of attorney fees is within the discretion of the trial judge. *Nienow v. Nienow*, 268 S. C. 161, 232 S. E. (2d) 504 (1977). Here, however, there is simply no evidence in the record to show that the wife's attorney was entitled to recover attorney fees at a rate greater than his usual rate. While the trial court mentions the high standing of wife's counsel and the results obtained, we note that the primary issue contested by the wife at trial was her alleged adultery which was decided adversely to her. We thus find an abuse of discretion in the award of the attorney fee. Accordingly, we modify the attorney fee award to $10,553.27, which represents payment for 83.5 hours at $110.00 per hour plus costs and expenses of $1,368.27.

## C.

The trial court awarded the wife temporary alimony of $1,200.00 per month. The husband vigorously sought to introduce evidence at the temporary hearing to prove that wife was guilty of adultery and that he should not be required to pay temporary alimony. The trial judge refused to consider the husband's evidence or make a finding on the contested matter of adultery. The husband maintains this was error. He argues further that once he proved the wife's adultery at the merits hearing, the wife should have been required to repay the amount she had received in pendente lite support. We agree.

The trial court found that the "argument by [husband] in regard to temporary alimony is well taken, but the Court considers this as temporary *support*, not alimony, prior to a hearing on the merits." We find the distinction invalid. Alimony, "is either temporary, which is payable during the pendency of the suit, or permanent, which is payable after determination of the suit." *Hornsby v. Hornsby*, 187 S. C. 463, 468, 198 S. E. 29, 31 (1938).

The law is well settled in this Country and England that adultery on the part of a wife operates to discharge the husband from all obligations to support her. *Rawson v. Rawson*, 37 Ill. App. 491 (1888). Section 20-3-120, Code of Laws of South Carolina, 1976, provides for the allowance of alimony pendente lite if prayed for by either spouse and if the "claim shall appear well-founded." Section 20-3-130 precludes an adulterous spouse from receiving alimony. Section 20-3-140 provides that "allowances of alimony and suit money *pendente lite* shall be made according to the principles controlling such allowance and actions for [d]ivorce *a vinculo matrimonii.*" While an award of alimony pendente lite is within the discretion of the trial judge, *Armaly v. Armaly*, 274 S. C. 560, 266 S. E. (2d) 68 (1980), the power should not be exercised unless the wife establishes a prima facie right thereto. *Jeffords v. Jeffords*, 216 S. C. 451, 58 S. E. (2d) 731 (1950).

In *Poliakoff v. Poliakoff*, 221 S. C. 391, 70 S. E. (2d) 625 (1952), our Supreme Court held that "where the husband sues the wife for divorce and the only showing before the court is his verified complaint," a "verified

answer by the wife denying the grounds for divorce and showing that she is without funds to defend the suit or maintain herself during the pendency of the action" establishes a prima facie case. Here, however, the wife, in the face of four affidavits from private investigators that she was guilty of adultery, presented no evidence that she was not. We think that under the circumstances of this case, the wife was at least required to proffer some evidence that she did not commit the adultery set out in the affidavits.

We also think the trial court erroneously construed Family Court Rule 52 as precluding the taking of testimony at temporary hearings. The rule provides:

> Evidence received by the Court at temporary hearings in all domestic relations matters shall be confined to verified pleadings, affidavits, and the financial declaration prescribed by Rule 19 of the Rules of Practice for the Family Courts, unless good cause is shown to the Court why additional evidence or testimony may be necessary.

We hold it was error under the circumstances of this case for the trial judge to preclude the husband from attempting to prove that the wife was an adulterous spouse, as contemplated by the statute, and was not entitled to temporary alimony.[4] In *Holloway v. Holloway*, 214 N. C. 662, 200 S. E. 436 (1939), the husband sued for a divorce on the ground of adultery. The wife denied the allegations of adultery and also pleaded condonation. The trial court awarded the wife alimony on her showing that she defended the action in good faith, she needed the allowance for her support, and that the husband was able to pay. The award was reversed on appeal to the North Carolina Supreme Court on the ground that the trial court had refused to hear or consider evidence, including a number of affidavits, offered by the husband to show

---

[4] We recognize that time constraints may preclude the taking of testimony in every case where adultery is denied by the offending spouse. However, where there has been a prima facie showing of adultery through testimony or affidavits, it is incumbent upon the spouse charged with adultery to present a prima facie showing that he or she did not commit the alleged adulterous acts. At a minimum, a trial judge must in such situations provide for reimbursement to the payor spouse if adultery is proven at the merits hearing.

the wife's adultery. The court said the rejected evidence had a direct bearing upon the good faith of the wife, and that the court had a duty to consider any evidence bearing upon the question and determine the question of good faith "only after a full and fair consideration of the evidence offered."

The trial judge is reversed on this issue and the issue is remanded to the trial court with instructions to reduce the wife's equitable distribution award by the amount of alimony paid by the husband.

## II.

### WIFE'S APPEAL

The wife appeals those portions of the divorce decree finding that: (1) she was an adulterous wife; (2) she was not entitled to pendente lite support during the pendency of this appeal; (3) the husband should not pay child support for the summer months preceeding the youngest child's entrance into college; and (4) the husband should not be sanctioned for improper contacts with the trial judge. The parties stipulated that all issues regarding child support are now moot.

### A.

We address first the wife's adultery. At the time of the divorce hearing, the wife had known a Mr. Berry for approximately fifteen years and had worked with him at one time. The wife and Berry had been dating for more than a year prior to the commencement of the divorce action. She had been observed going to and from his condominium at night on numerous occasions. Private investigators testified that the wife and Berry went to great lengths to ensure that their meetings were clandestine. The wife and Berry had been observed displaying great affection for each other in the form of embracing and kissing when they met and departed. Both the wife and Berry admitted to some display of affection but claimed their relationship was purely platonic. The wife and Berry also had taken trips together, but insisted that family membes were also present. The wife admitted to an incident of adultery with a sailor during the course of the marriage.

The trial judge found that testimony showed the wife "had the opportunity and inclination to commit adultery" and that adultery was established by the clear preponderance of the evidence. In our view, circumstantial evidence supports the trial court's finding that the husband has shown the wife's adultery by the requisite proof. Adultery may, and usually is, shown by circumstantial evidence. *Odom v. Odom*, 248 S. C. 144, 149 S. E. (2d) 353 (1966). Such proof must be shown by a clear preponderance of the evidence. *Calcutt v. Calcutt*, 282 S. C. 565, 320 S. E. (2d) 55 (Ct. App. 1984). As a general rule the proof must be sufficiently definite to identify the time and place of the offense and the circumstances under which it occurred. Insufficiency in this respect, however, should not be allowed to defeat a divorce where the court is fully convinced adultery has in fact been committed and the offending party has had an opportunity to defend against the charge. *DuBose v. DuBose*, 259 S. C. 418, 192 S. E. (2d) 329 (1972). We hold the trial court's finding of adultery was consonant with the clear preponderance of the evidence.

### B.

The wife next contends the husband should have been required to continue support payments to her during the pendency of the appeal. Having found that she was not entitled to temporary alimony disposes of this issue. Moreover, the wife argued the same position in her motion to remand before the Supreme Court. Her motion was denied. Where a motion has been denied by the Supreme Court, the Court of Appeals has no power to rule differently. *See, Langley v. Boyter*, 286 S. C. 85, 332 S. E. (2d) 100 (1985).

Finally, the wife argues that the trial court committed reversible error in failing to sanction the husband for writing a letter to the trial judge complaining of the wife's purported delay of the proceedings. The trial judge admonished the husband not to do it again but refused to otherwise sanction him. We find no error. The conduct of a proceeding is within the discretion of the trial judge. *Merrill v. Barton*, 250 S. C. 193, 156 S. E. (2d) 862 (1967).

Affirmed in part, reversed in part, modified and remanded.

BELL and GOOLSBY, JJ., concur.