16821

WISCONSIN MOTOR CORP. v. GREEN *ET AL.*
(79 S. E. (2d) 718)

*Messrs. Edens & Woodward,* of Columbia, *for Appellant,*

*Messrs. Irvine F. Belser,* and *McLeod & Singletary,* of Columbia, *for Respondents.*

January 13, 1954.

BAKER, Acting Associate Justice.

The appellant herein, Wisconsin Motor Corporation, with its principal place of business in Milwaukee, Wisconsin, is engaged in the manufacture and sale of gasoline engines and parts for farm and other equipment. The respondents represent individual and corporate operations of Henry D. Green. Mr. Green used the name of Green Harvester and Implement Company and Green Distributing Company. The Green Harvester Company is a South Carolina corporation owned and controlled by Mr. Green. There is no question in the case as to the separate identity of Henry D. Green doing business as Green Harvester and Implement Company and Green Harvester Company, and hereinafter they will be referred to simply as respondents.

Some time during the year of 1946, appellant and respondents entered into a contract whereby respondents received a franchise for the sale and distribution of the products of appellant, and out of this contractual relationship resulted a long running account which is the basis of this action.

Apparently the method of credit extended to respondents was on the basis of an open account as long as respondents' indebtedness for goods purchased did not exceed the sum of $3,000.00, but when the indebtedness became more than $3,000.00, goods were then shipped on a C. O. D. basis. Considerable correspondence, according to the record, beginning April 16, 1947, was had between appellant and respondents concerning the amount due and owing by respondents. On August 20, 1947, appellant furnished respondents an itemized statement as of August 1st. On December 1, 1947, respondents replied to this statement, challenging the accuracy thereof, stating they would be glad to send cancelled checks showing payment for many of the items charged against them. Correspondence continued about the account, with the last letter being dated Septem-

ber 23, 1948, and in the meanwhile respondents had reduced the amount of the indebtedness by several payments, but continued their insistence that appellant's statement of the account was inaccurate, claiming items charged which had been paid for either by check, cash for C.. O. D. shipments or sight draft, bill of lading attached. Appellant did find some discrepancies in the long account but which were corrected in a revised statement on or about December 23, 1947. In any event, after September 23, 1948, or as of that date, appellant claimed respondents were indebted to them for gasoline engines and parts in the sum of $2,946.91, which, of course, was denied by respondents. In June of 1949 appellant brought action on the account against the respondents on verified complaint with statement of account attached, seeking judgment in the sum of $2,946.91. The respondents in their answer denied the accuracy of the account, alleging credit of $2,172.53 thereon, and in addition thereto alleged a counterclaim against appellant in the sum of $25,000.00 for breach of contract. For reasons hereinafter set forth, respondents' counterclaim and appellant's reply thereto are not involved in this appeal.

The issues created by the complaint and the answer required a long and complicated accounting between the parties, whereupon this phase of the case was referred to the Master for Richland County and treated for all purposes as a suit in chancery. By the order of reference the counterclaim was left upon the canlendar for trial by jury and has not yet been disposed of. Thereafter the Master of Richland County held four references following which he rendered his report to the Court of Common Pleas wherein he found, concluded and recommended that appellant's demand for judgment was correct and the Court should pass its order of judgment in favor of appellant for the amount demanded, to wit, $2,946.91. The respondents excepted to the Master's report, challenging among other things the Master's findings relative to thirteen engines billed in the sum of $1,377-.35 which the Master concluded were not paid for in cash

upon delivery as contended by respondents. Thereafter the exceptions to the report of the Master were argued before the Presiding Judge, and the Presiding Judge issued his order reversing the findings of the Master as to the thirteen engines, thereby reducing the judgment for appellant from $2,946.91 to $1,569.56. In all other respects the Master's report was affirmed.

Appellant is now appealing to this Court from that part of the Presiding Judge's order which sustained respondent's exceptions to the findings of the Master relating to the sale of the thirteen engines. The whole question of this appeal is whether these engines were shipped and received upon open account or C. O. D. basis, the respondents claiming the engines were shipped on C. O. D. basis and were paid for upon delivery.

Some time prior to May 6, 1947, respondents placed an order with appellant for thirteen single cylinder gasoline engines. An invoice dated May 6, 1947, was sent by appellant to Green Distributing Company, another trade name of Henry D. Green. This invoice, for $1,377.35, carried C. O. D. terms, and was in due course received by respondents, but according to the evidence in behalf of appellant, the C. O. D. listing was in error and the shipment was an open account.

The shipment in question was picked up in Milwaukee by Co-Ordinated Transport, Inc., under a uniform straight bill of lading which did not contain C. O. D. terms. Either the original of the bill of lading or a copy thereof was mailed to respondents. Turner's Transfer, Inc., received the shipment in Chicago, Ill., and delivered the engines to the Kilgo Transfer Company in Charlotte, N. C., who in turn made delivery to respondents in Columbia, S. C., through the services of City Freight Delivery.

The records of the different carriers relating to this shipment were introduced in evidence, which do not contain any indication the shipment was on a C. O. D. basis, and, fur-

ther, the only money received by the delivering carrier was payment of freight in the amount of $55.49. The original freight bill, for $55.49, offered in evidence by respondents is the only receipt for the payment of any money, concerning the shipment, introduced in evidence by respondents. The receipt on this freight bill is signed by R. H. Plyler, truck driver for Kilgo Transfer Company, simply stating "Paid," and dated May 14, 1947.

Mr. Green testified he paid to some person making delivery of the shipment the amount of the invoice, $1,377.35, in cash from his pocket. He, or the respondents, did not produce any bookkeeping records whatsoever to show if this payment by Mr. Green had been entered, nor did respondents call upon the two bookkeepers who were available, to testify about any of respondents' records. It is well settled that if a party fails to produce the testimony of an available witness or witnesses on a material issue in the cause, or produce available records, it may be inferred that the testimony, or the contents of the records, if presented, would be adverse to the party who fails to call the witness or present the records. The record in this case does not contain any suggestion or explanation concerning the failure to call the bookkeepers as witnesses, or satisfactory explanation of the failure to produce the ledgers and books of respondents.

The respondent Mr. Green testified that very often he completed transactions by cash instead of check and for this statement there is proof in the record. There was offered in evidence checks to the order of Mr. Green as reimbursement from one or more of his companies for payments made by him, but no cancelled check was offered to show repayment to Mr. Green of the sum of $1,377.35. The only written instrument to show this payment was the invoice forwarded to respondents by appellant which carries the notation "pd cash." This written notation was made by Mrs. Green. Whether or not any such item was ever entered upon respondents' records is not known since such records were not

made available, and the inference, of course, is adverse to respondents. The testimony as to payment is based principally upon the oral evidence of the respondent Mr. Green and two men who said they saw payment.

Respondents, about the time of this shipment, conducted a large volume of business, between one million and a million and a half in dollars. Many, if not practically all of the C. O. D. shipments were paid for with cash. Mr. Green could not remember whether the freight bill was satisfied by check or cash but the freight bill has noted thereon payment by check. He stated the driver of the delivering carrier had some kind of paper in his hands with $1,377.35 written thereon, and he, the respondent, "had some kind of paper for $1,377.35," whereupon he paid to this driver, whom he could not identify or describe, the sum of $1,377-.35, and he thought the driver gave him a receipt, but he does not know where the receipt could be located. The only papers the delivering driver would have would be the duplicate bill of lading or the freight bill, or both, neither of which showed a C. O. D. shipment. There is no explanation by respondents if payment was made in cash, why there was not also paid C. O. D. charges, and the amount thereof.

In commenting upon the testimony of Mr. Green, and evidence offered in corroboration, the Master stated in his report the following, which we find thoroughly supported by the record:

"I find from the testimony of defendants' witness that its business ran between One Million and One-half Million Dollars a year; and that they operated at other places than the City of Columbia. While it was testified that Mr. Green quite often made payments in cash, it was also testified by a witness called by the defendants, an employee of American Railway Express, that although he was often paid by Mr. Green in cash, he invariably gave a receipt therefor. It was also the testimony of Mr. Green and one of the defendants' employees that they recalled payment in cash for these thirteen (13) engines in question. However, this line of testi-

mony was indefinite as to the time and place, and neither of these witnesses could describe the truck and driver making the delivery. It is inconceivable that a businessman of the nature of Mr. Green would make a payment of $1,377.35 in cash without taking and preserving a receipt therefor, and without the same being in some manner reflected by the books of the defendants. In this connection, the defendants could not produce a receipt nor did they offer their books in evidence, nor did they call any one of their two book-keepers."

During the period of the correspondence between appellant and respondents there is a letter from respondents, dated March 18, 1948, wherein respondents list seven items "which our records show that we have paid, and which are still charged to us, according to your statement." These items, which include the bill for $1,377.35, total $2,172.53, which is the amount claimed credit in respondents' answer. The Master found against respondents on all items and was affirmed by the Presiding Judge, excepting the charge for the May 6, 1947, shipment. From the time the account became in dispute, about the middle of 1947, until the completion of the references, the latter part of 1951 or the early part of 1952, the respondents failed to produce a single cancelled check, receipt, ledger or bookkeeping record to show payment of any disputed item. On December 1, 1947, respondents wrote appellant a letter which contains this sentence, "If you wish, we'd be glad to send you your cancelled checks showing where we paid for the Wisconsin goods, either cash, C. O. D. or SD/BL." Cancelled checks were not produced in satisfaction of the amount in issue.

Whether the action be one in equity or at law, the respondents have failed to prove payment for the shipment of thirteen engines on May 6, 1947. Once more we refer to the Master's report and quote therefrom the concluding paragraph, preceding his recommendation for judgment:

"I feel it proper to call attention to the fact that I have seen and heard the witnesses in this case; and giving due weight to all of the testimony, and after giving due consideration to the complete history of the shipment of the merchandise in question from the shipper to the consignee (which is clear and definite to the effect that this was not a C. O. D. Shipment), I find that the defendants are simply mistaken about their payment in cash for this shipment. As already pointed out, it seems true that these defendants do considerable business in cash, and possibly they have some other shipment in mind. I, therefore, must conclude that the plaintiff's account in the sum of $2,946.91, as set forth in its verified complaint, is correct."

Appellant's exception to the order of the Court of Common Pleas is sustained. The Presiding Judge directed in his order "that dependent upon the outcome of the defendants' counterclaim against the plaintiff, the plaintiff shall have leave to enter judgment for the said sum of One Thousand Five Hundred Sixty-nine Dollars and Fifty-six Cents ($1,569.56)." Appellant also excepted to this conditional entry of judgment, which exception has been abandoned.

There is now due and owing by respondents to appellant the sum of $2,946.91, and, in accordance with the order of the lower court, appellant shall have leave to enter judgment for said amount, with costs, dependent upon the outcome of the issue or issues arising from the counterclaim.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.