21235

SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, o/b/o Rita Holden Forbes, Respondent, v. Franklin Olin JOHNSON, Appellant.

(266 S. E. (2d) 878)

*Jack T. Flom,* of *Marshall, Flom & Haar,* Myrtle Beach, *for appellant.*

*Atty. Gen. Daniel R. McLeod, Asst. Attys. Gen. Clifford O. Koon, Jr.* and *Russell D. Ghent,* Columbia, and *Asst. Atty. Gen. Preston F. McDaniel,* Florence, *for respondent.*

May 19, 1980.

*Per Curiam:*

This is a paternity action initiated by respondent, the South Carolina Department of Social Services (D.S.S.), to establish a child support obligation against appellant, Franklin Olin Johnson, in favor of Frankie Holden, the illegitimate child of Rita Holden Forbes, born March 8, 1976. The lower court held that D.S.S. had proved its case by a preponderance of the evidence; found respondent to be the father of the minor child at issue; and, ordered him to make child support payments. This appeal followed.

Appellant challenges the lower court's finding that he is the father of the minor child at issue and contends that finding is against the greater weight or preponderance of the evidence. As this is an action in equity, heard by the Family Court Judge alone, this Court has jurisdiction to review the evidence and find facts in accoldance with its views of the preponderance of the evidence. *Davis v. Holloway,* 265 S. E. (2d) 264 (S. C. 1980); *Jones v. Jones,* 270 S. C. 280, 241 S. E. (2d) 904 (1978); *Townes v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976). In that light, we review the evidence accordingly.

Rita Holden Forbes, the mother, testified that she and appellant began dating during July of 1974. At that time she was sixteen years old and in the tenth grade. She further testified that during the course of their relationship, she and appellant had frequent sexual relations. She was apparently somewhat uncertain as to exactly when this relationship terminated. At one point she testified that their relationship ended during December of 1974. On cross-examination, she admitted that duing a deposition she had indicated they ". . . . broke up in February of 1975."

In any event, the exact date on which the parties terminated their relationship is not critical.

The baby's mother continued by testifying that she did not see appellant for several months after they "broke up". She then testified that on July 17, 1975, at the invitation of appellant's mother,[1] she went on an overnight trip with appellant's family and during that trip she and appellant had sexual relations several times. She ended her testimony by stating that she did not have sexual relations with anyone else during the time she became pregnant and had not had sexual relations with appellant since July 17, 1975.

The only other witness for D.S.S. was a cousin of the baby's mother who testified that appellant admitted to her "Little Frankie is my son."

By stipulation of the parties, the results of a blood test were admitted as an exhibit of the lower court. That test did not exclude appellant as the child's father.

The foregoing evidence established a *prima facie* case of paternity and shifted the burden of proof to appellant. See *Davis v. Holloway, supra.*

At this point, it should be noted that it is only possible for appellant to be the father if it is believed that he engaged in sexual relations with the baby's mother on July 17, 1975 and those relations resulted in conception.

Appellant's defense began with the expert testimony of a medical doctor specializing in Obstetrics and Gynecology. The doctor testified that in his opinion it was "unlikely" that the minor child in issue was conceived on July 17, 1975 and that in his opinion, the baby would have to have been conceived prior to July 17, 1975. This opinion was largely based on the fact that the baby weighed six pounds eight

---

[1] On cross-examination, the baby's mother admitted that she was "real close" to appellant's mother and that appellant's mother was "almost [her] second mother."

ounces at birth and according to the D.S.S. evidence, the gestation period was only 235 days.[2]

Appellant then took the witness stand and admitted a tempestuous relationship with the baby's mother involving frequent sexual relations which began in July of 1974 and ended in October of that year. Appellant also admitted that the baby's mother went on an overnight trip with his family on July 17, 1975, but denied having sexual intercourse with her during that trip or at any time after October 1974. Appellant further denied that he had ever admitted paternity to the baby's mother's cousin. Appellant did admit visiting the baby's mother in the hospital shortly after the baby's birth, but insisted that he did so at his mother's request.

Appellant's mother testified that she had known the baby's mother since 1973. She further testified that she invited the baby's mother to go on the July 17, 1975 overnight trip and that she and the baby's mother stayed in the same room. She also testified that in her opinion, appellant and the baby's mother did not have the opportunity to have sexual relations during that trip.

Appellant's final witness was a friend of the baby's mother and a relative of appellant who testified that he went with appellant to visit the baby's mother in the hospital but did so only at the request of appellant's mother.

In summary, appellant's defense consisted of expert opinion medical testimony which indicates conception did not occur on July 17, 1975 and testimony indicating that appellant and the baby's mother did not engage in sexual relations on that date. D.S.S. did not offer any evidence to explain the alleged short period of gestation as it related to the relatively normal size of the child, or to show that conception could have occurred on any date other than July 17, 1975.

---

[2] The normal gestation period is 280 days, thus, if D.S.S. is to prevail, it must be believed that the baby was 45 days premature.

Under the facts of this case, we hold that appellant carried his burden of proof in rebutting the *prima facie* case previously established by D.S.S.

Accordingly, the judgment of the lower court is reversed and the matter is remanded for entry of judgment in favor of appellant.