0060

Kathy Ann C. CORLEY, Respondent, v. Heber ROWE, Appellant.
(312 S. E. (2d) 720)

Court of Appeals

*H. Hugh Rogers* and *Joseph M. Fullwood*, of *Rogers, Duncan, Fullwood & Perrin*, Lexington, *for appellant.*

*Jeff D. Griffith, III*, Saluda, and *Richard M. Kennedy, Jr.*, Columbia, *for respondent.*

Feb. 6, 1984.

GOOLSBY, Judge:

This is a paternity action initiated by Kathy Ann C. Corley, the respondent, against Heber Rowe, the appellant. The trial court found that Rowe was the father of Penelope Dawn Corley and ordered him to pay $50 weekly child support. Rowe raises three issues on appeal. First, Rowe alleges that the trial court accorded too much weight to the results of a Human Leucocyte Antigen (HLA) blood test. Second, Rowe asserts that he rebutted Corley's *prima facie* case and the trial court erred in failing to make such a finding. And third, Rowe assigns error to the trial court's judgment ordering him to pay $50 per week in child support. We affirm the trial court on the first two issues and reduce the amount of child support.

Mrs. Corley was married to Mrs. Rowe's brother and two children were born of that union. After the death of her husband in 1975, she turned to the Rowes for comfort. Corley and her children spent every weekend, Friday evening through Sunday evening, with the Rowes beginning after her husband's death until October 1979. The second weekend in July 1977, Corley alleges that she and Rowe began engaging in sexual intercourse which continued every weekend thereafter until her sixth month of pregnancy. Corley learned she was pregnant in December 1978 and gave birth to a full term baby on May 27, 1979. According to Corley, the critical period of conception was between mid-July and mid-August. During this period, she had sexual relations with Rowe only.

The parties submitted to two blood tests to aid in the

determination of paternity, one of which was an HLA test which identifies certain genetic material shared by the father and the child and computes the frequency with which the father's corresponding genotypes are found within the pertinent racial or geographical population. *See* I. M. Ellman and D. Kaye, "Probabilities and Proof: Can HLA and Blood Group Testing Prove Paternity?" 54 N.Y.U. Law Review 1131 (December 1979). Prior to trial, counsel stipulated that the tests would be admitted into evidence "for what they're worth." It was agreed that the tests would not be determinative of paternity but simply additional evidence to be considered. In reaching his decision that Rowe was the father of Penelope, the trial judge relied in part upon the HLA test results.

Rowe asserts on appeal that the trial court erred in considering the results of the HLA test because no foundation was laid establishing the credentials of the technician and the conditions under which the test was administered. The appellant claims that there was no evidence adduced at trial by which the trial court could make a reasonable determination of the validity of the test. We find no merit to Rowe's argument.

First of all, we note that Rowe failed to object to the admissibility of the test results; therefore, he is in no position to complain about them now. *Cf. State v. Sullivan*, 277 S. C. 35, 282 S. E. (2d) 838 (1981). Moreover, not only did Rowe fail to object, he even stipulated that the test would be admissible. Stipulations, of course, are binding upon those who make them. 73 Am. Jur. (2d), *Stipulations* § 8 at 543 (1974).

Regarding Rowe's specific argument that the trial court accorded too much weight to the results of the HLA test, the weight to be given evidence lies within the province of the fact finder. *Lee v. Lee*, 237 S. C. 449, 117 S. E. (2d) 715 (1961). The trial court's order makes it clear that the HLA test was but one of several factors which it considered in arriving at its decision. We cannot find error, therefore, in the court's consideration of the HLA test results. *See Davis v. Holloway*, 274 S. C. 500, 265 S. E. (2d) 264 (1980); *S. C. Department of Social Services v. Johnson*, 275 S. C. 7, 266 S. E. (2d) 878 (1980).

Rowe next declares that Corley failed to meet her burden of

proving paternity. Rowe concedes, however, that Corley established a *prima facie* case of paternity, thus shifting to him the burden of rebutting the evidence.

According to appellant, he rebutted the evidence through his own testimony and that of his wife. The latter testified that she would have known if the parties were having sexual relations at night because she was a light sleeper and she would have heard them in the next room through an open doorway. The bed in the room where the relations allegedly occurred was only six to ten feet away from the bed in which the wife slept. Rowe adamantly denied that he ever engaged in any sexual relations with Corley. He stated that it was "inherently incredible" that if he had had an illicit relationship that his wife would not have discovered it.

Rowe attempts to distinguish *Baron v. Dyslin*, 309 S. E. (2d) 767 (S. C. App. 1983), in which this court held that the alleged father failed to rebut the mother's *prima facie* case. In *Baron*, no witnesses could account for Dyslin's whereabouts when the alleged relations which led to conception occurred. Also, Dyslin admitted previous sexual encounters with Baron which he claimed had ceased.

In the instant case, Rowe's wife testified that she was always in the house when Corley was there and that she would have known if Corley and Rowe were having an illicit relationship. Rowe never admitted to having intercourse with Corley. Based on these factors, Rowe argues that he rebutted Corley's *prima facie* evidence.

We do not agree with Rowe that he convincingly countered the mother's *prima facie* evidence. In *Baron v. Dyslin, supra,* we reversed the trial court and found that Dyslin did not satisfactorily rebut the mother's *prima facie* case which, among other things, included an HLA blood test that failed to exclude Dyslin as the father at the 95th percentile. Dyslin fell short in his proof regarding a lack of access to the mother on the date of conception.

Here, the evidence for paternity is even more persuasive. The HLA blood test failed to exclude Rowe as the father at the 99.2 percentile. Then, too, he had an opportunity for access during the period of conception. We do not regard as "incredible" evidence that a husband could have sexual intercourse with another woman while his wife slept ten feet away. An act

of that nature would be risky, perhaps, but it could happen.

The third issue before the court involves the child ■■ support payments Rowe was ordered to pay. The question of child support is largely within the discretion of the trial court whose decision will not be disturbed on appeal unless an abuse of discretion is shown. *Spires v. Higgins*, 271 S. C. 530, 248 S. E. (2d) 488 (1978). Since this is an equity proceeding tried by the judge alone, we may determine the issues in accordance with our view of the preponderance of the evidence. *Major v. Major*, 277 S. C. 318, 286 S. E. (2d) 666 (1982). In deciding the amount of child support, the court must consider: the needs of the child; the incomes, earning capacities and assets of the parents; the health, age, and general physical conditions of both parents; and the necessities and living expenses of both parents. *Atkinson v. Atkinson*, 309 S. E. (2d) 14 (S. C. App. 1983).

Corley's uncontradicted testimony established that $255 per month is needed for the child's care. Rowe testified that his net weekly income is $170. Corley's net income including social security for her other two children is $904 monthly. By deducting the $361 social security, Corley still has a net income of $543 per month. Rowe's net monthly income is $736. The record is void of any evidence to indicate that the parties are not in good physical condition.

The trial court ordered Rowe to pay $50 weekly in child ■■ support. We find this amount to be somewhat excessive and reduce the payments. By requiring Rowe to pay approximately $216 monthly, Corley only has to contribute $39 monthly. Each parent has an obligation to contribute toward the support of a minor child. *Lunsford v. Lunsford*, 277 S. C. 104, 282 S. E. (2d) 861 (1981); *Disher v. Disher*, 310 S. E. (2d) 823 (S. C. App. 1983). There is no evidence here to show why the burden of supporting this child should not be shared equally, given the financial status of the parties. We therefore reduce the amount of suport Rowe is to pay to $35 per week, plus the administrative charge of three per cent (3%); thus, Rowe's total weekly payment is $36.05.

The judgment of the trial court is

Affirmed as modified.

SHAW and CURETON, JJ., concur.