506 S.E.2d 526

**Steven R. GRIFFITH, Appellant/Respondent,**

v.

**Jennifer A. GRIFFITH, Respondent/Appellant.**

No. 2890.

Court of Appeals of South Carolina.

Heard June 2, 1998.
Decided Oct. 12, 1998.

D. Dusty Rhoades, Charleston, for appellant/respondent.

David L. Devane, Charleston, for respondent/appellant.

HOWARD, Judge:

In this divorce action, we are asked to consider the implications arising from the refusal of a party who seeks the affirmative relief of alimony to answer questions concerning alleged adulterous behavior, asserting the Fifth Amendment privilege against self-incrimination.[1] Steven R. Griffith (the husband) and Jennifer A. Griffith (the wife) sued each other for a divorce on multiple grounds, including adultery. In the final hearing, the wife and two witnesses named as paramours declined to answer questions concerning their alleged adulterous conduct, asserting the Fifth Amendment privilege against self-incrimination. The family court denied the wife permanent alimony because she asserted her Fifth Amendment privilege, and she appeals from this ruling. The husband appeals the family court's refusal to draw an adverse inference from the wife's invocation of the privilege against self-incrimination, asserting that this inference, along with other evidence, established the wife's adultery as a ground for divorce. The husband also appeals the failure of the family court to order reimbursement of temporary alimony payments, the valuation of the equitable distribution of property, and the award of attorney's fees to the wife. We affirm in part, reverse in part, and remand for further proceedings.

## FACTS

The parties were married in 1982 and have two minor children. They separated in March of 1994, and the wife brought an action for separate maintenance and support. The court granted her temporary custody, child support, and temporary alimony. Following discovery, the husband brought a separate action for custody and made a motion in this case to amend his answer to assert adultery as a ground for divorce and as a bar to alimony. This motion was made on November 18, 1996, two days before the scheduled final hearing.[2]

---

1. *U.S. Const.* amend. V. In *South Carolina*, adultery is a crime. S.C.Code Ann. §§ 16–15–60 & 70 (1985).

2. The propriety of maintaining a second, simultaneous action for custody is not before us. The parties and the family court apparently treated the husband's action as consolidated with the wife's action, though we find no order of consolidation in the record.

The family court, the Hon. Berry L. Mobley presiding, granted the motion over the wife's objection, and continued the final hearing. Both the husband and wife then amended their pleadings to seek a divorce based on adultery. The husband also alleged the alternative ground of living separate and apart for one continuous year, and both alleged habitual drunkenness.

The parties reached an accord on the issues of custody and child support, which the court adopted in its final decree. The merits hearing was held before the Hon. Frances P. Segars–Andrews on February 11 and 12, 1997, following which the court granted a divorce based on one year's continuous separation. At the beginning of the hearing, the parties stipulated that they had been granted immunity from prosecution for adultery by the Solicitor for the Ninth Judicial Circuit. In the hearing, the husband called the wife and her two alleged paramours to the witness stand and directly asked each if the wife had committed adultery. All three refused to answer the questions, asserting their Fifth Amendment privilege against self-incrimination.[3]

The second of the two alleged paramours admitted returning to Charleston, South Carolina from El Paso, Texas to visit with the wife, following her telephone call to him. He acknowledged that he and the wife had been romantically involved during high school. In June of 1995 he stayed at a local motel, and the wife visited him there. He also admitted that the wife told him about a previous relationship with another man named Bill (the first alleged paramour is named Bill), and from her words he "inferred that it was a very close relationship including a sexual relationship," though he added that he "had no knowledge directly."

Based on the refusal to answer the direct questions concerning adulterous conduct, the husband asked the court to infer the wife's adultery. The husband argued that this inference, coupled with the other testimony as noted above, established

---

**3.** The husband did not specifically raise the impropriety of the wife's invocation of the privilege against self-incrimination in light of the purported grant of immunity to the trial court. Thus, we do not address the issue. *See Talley v. South Carolina Higher Educ. Tuition Grants Comm.*, 289 S.C. 483, 347 S.E.2d 99 (1986) (issue not raised below will not be considered on appeal).

adultery by a clear preponderance of the evidence. The family court did not rule on the husband's request to consider a negative inference from the invocation of the Fifth Amendment privilege, although the court denied the wife the affirmative relief of permanent alimony based on the fact that she did invoke the privilege. The court ruled that the husband failed to prove adultery. From a motion to reconsider filed pursuant to Rule 59(e), SCRCP, the court declined to modify its ruling, or to require the wife to repay the temporary alimony.

In the divorce decree, the court ordered an equitable division of marital property ostensibly on a 50/50 basis, ordering that each party retain possession of the property which that party possessed. The court also awarded the wife attorney's fees of $10,000. Both parties stipulated at oral argument that a 50/50 division of property was proper, irrespective of this court's resolution of the remaining issues. But the husband appeals the family court's award, arguing it does not result in an even allocation of assets.[4] The husband also appeals the award of attorney's fees. The wife appeals the court's pretrial ruling allowing the husband to raise adultery as an issue and the denial of affirmative relief on the basis of her invocation of the Fifth Amendment privilege against self-incrimination.

## DISCUSSION

### I. Wife's Appeal

### A. Motion to amend

■ The wife first asserts the lower court should not have allowed the husband to amend his pleadings to allege adultery two days before trial, citing *Oyler v. Oyler*, 293 S.C. 4, 358 S.E.2d 170 (Ct.App.1987). We find this argument to be without merit.

---

4. The husband also appealed the court's rulings as to his military retirement account and the refusal to reopen the case to admit and consider after discovered evidence. The parties stipulated at oral argument, however, that these issues have been rendered moot during the course of this appeal by the husband's separation from the service, with the exception of the amount to which the wife is entitled. This, the parties agree, must be decided by the lower court.

In *Oyler* this court held that a party may not raise adultery as an avoidance to an action for alimony for the first time at trial. There was no pretrial motion to amend pleadings and assert adultery as a defense. The issue was raised during cross-examination of the wife at trial. The family court "liberally" construed the husband's general reply to the wife's counterclaim for alimony to encompass the issue. This court held the wife had been prejudiced because adultery had not been pled, giving her notice. We stated, "[c]learly, ... adultery involves the introduction of new matter which constitutes an avoidance to a claim for alimony," and must be pled under Rule 8(c), SCRCP. *Id.* at 7, 358 S.E.2d at 172.

Pleadings may be amended by leave of court, which "shall be freely given when justice so requires and [it] does not prejudice any other party." Rule 15(a), SCRCP; [5] *see Bennefield v. Bennefield*, 263 S.C. 233, 209 S.E.2d 563 (1974) (motion to allow amendment of pleading is addressed to the sound discretion of the family court). The wife suffered no prejudice in this case by the pretrial ruling, since the court continued the trial to allow the amendment of the pleadings and gave each party two months to prepare. Where, as here, there is no prejudice, the family court has not abused its discretion by allowing the amendment.

### B. Denial of affirmative relief

The wife argues that the denial of the affirmative relief of alimony in a divorce case to a party who invokes the privilege against self-incrimination "simply cannot be the rule in South Carolina." We disagree.

Under the laws of this state, adultery is a criminal offense. S.C.Code Ann. § 16–15–60 & 70 (1985). A conviction of adultery subjects the violator to punishment of up to a five hundred dollar fine, one year imprisonment, or both. *Id.* "The framers of the Bill of Rights recognized the dangers inherent in self-incrimination, and as a result, placed in the Fifth Amendment a prohibition against compelling a witness to testify against himself. This prohibition against compelled self-incrimination is a basic constitutional mandate which is

---

**5.** Made applicable to the family courts by Rule 81, SCRCP, and Rule 2, SCRFC.

not a mere technical rule, but rather, a fundamental right of every citizen in our free society." *State v. Thrift,* 312 S.C. 282, 296, 440 S.E.2d 341, 349 (1994). Therefore, it is legally proper for persons facing criminal prosecution for adultery to invoke their Fifth Amendment privilege against self-incrimination.

No South Carolina case has directly addressed whether a party may continue to seek the affirmative relief of alimony while denying the opposing party the opportunity to cross-examine on the subject of their alleged adultery. The handling of the refusal to answer relevant questions regarding adultery on Fifth Amendment grounds in other states is, of course, dependent on the criminality of the alleged conduct in the first instance. Our research indicates that those states confronted by this issue have almost uniformly concluded that one who seeks this affirmative relief in a civil case may not invoke the Fifth Amendment privilege against self-incrimination in response to proper questions relating to the subject matter in issue. In such instances, the trial court may properly require them to choose between the Fifth Amendment privilege and the continuation of their claim for affirmative relief. *See Cantwell v. Cantwell,* 109 N.C.App. 395, 427 S.E.2d 129 (1993); *Stockham v. Stockham,* 168 So.2d 320 (Fla.1964) (equity considerations require complaining spouse in divorce action to answer requests or pursue action no further); *Minor v. Minor,* 232 So.2d 746 (Fla.Dist.Ct.App. 1970), *aff'd* 240 So.2d 301 (Fla.1970); *Christenson v. Christenson,* 281 Minn. 507, 162 N.W.2d 194 (1968) (plaintiff required to waive privilege against self-incrimination or have divorce action dismissed); *Franklin v. Franklin,* 365 Mo. 442, 283 S.W.2d 483 (1955) (en banc) (complaining spouse's refusal to answer questions at support hearing justified striking of spouse's pleadings); *Pulawski v. Pulawski,* 463 A.2d 151 (R.I.1983) (wife could not seek financial relief and at the same time preclude her husband from examining her on other matters that were relevant to that relief).[6]

---

6. Other courts have made the same requirement in civil cases that do not concern divorce. *See Afro–Lecon, Inc. v. United States,* 820 F.2d 1198 (Fed.Cir.1987) (party may not bring action, claim Fifth Amendment privilege, and proceed with action); *Lyons v. Johnson,* 415 F.2d 540, 542 (9th Cir.1969) ("The scales of justice would hardly remain

These courts are uniform in holding, either directly or by necessary implication, that the denial of the right to seek affirmative relief to one who refuses to answer questions relevant to the issues is not a violation of any right guaranteed by the Fifth Amendment. As the court reasoned in *Lyons v. Johnson*:

> If any prejudice is to come from such a situation, it must, as a matter of basic fairness in the purposes and concepts on which the right of litigation rests, be to the party asserting the claim and not to the one who has been subjected to its assertion. It is the former who has made the election to create an imbalance in the pans of the scales.

415 F.2d 540, 542 (9th Cir.1969); *see also Minor v. Minor*, 232 So.2d 746, 747 (Fla.Dist.Ct.App.1970), *aff'd* 240 So.2d 301 (Fla.1970) ("The rationale of *Stockham* is clearly and properly bottomed on the venerable maxim that one seeking equity must do equity; thus if appellant would be a suppliant in a court of conscience she need only bare her own conscience.")

In the North Carolina case of *Cantwell v. Cantwell*, the court observed:

> While we recognize that the defendant in the present case had the right to invoke her privilege against self-incrimination, "[t]he interests of the other party and regard for the

---

equal in these respects, if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim"); *Pavlinko v. Yale–New Haven Hosp.*, 192 Conn. 138, 470 A.2d 246 (1984) (plaintiff invoking the privilege against self-incrimination risks having complaint dismissed); *City of St. Petersburg v. Houghton*, 362 So.2d 681 (Fla.Dist.Ct.App.1978) (petition for affirmative relief properly dismissed where party seeking affirmative relief invokes Fifth Amendment privilege against self-incrimination); *Master v. Savannah Sur. Assocs., Inc.*, 148 Ga.App. 678, 252 S.E.2d 186 (1979) (affirming trial court's dismissal based on Plaintiff's invocation of Fifth Amendment privilege); *Galante v. Steel City Nat'l Bank of Chicago*, 66 Ill. App.3d 476, 23 Ill.Dec. 421, 384 N.E.2d 57 (1978) ("Plaintiffs have forced the defendants into court. It would be unjust to allow them to prosecute their cause of action and, at the same time, refuse to answer questions, the answers to which may substantially aid defendants or even establish a complete defense."); *Levine v. Bornstein*, 13 Misc.2d 161, 174 N.Y.S.2d 574 (Sup.Ct.1958) (plaintiff has right to invoke the Fifth Amendment privilege, but not at detriment to defendant's ability to develop a defense), *aff'd*, 7 A.D.2d 995, 183 N.Y.S.2d 868 (1959), *aff'd*, 6 N.Y.2d 892, 190 N.Y.S.2d 702, 160 N.E.2d 921 (1959).

function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege...." The privilege against self-incrimination is intended to be a shield and not a sword. Therefore, "if a plaintiff seeks affirmative relief or a defendant pleads an affirmative defense[,] he should not have it within his power to silence his own adverse testimony when such testimony is relevant to the cause of action or the defense."

109 N.C.App. 395, 427 S.E.2d 129, 130 (1993) (citations omitted).

The *Cantwell* court concluded that the defendant "was properly given the choice to either shield herself from criminal charges by refusing to answer questions regarding her alleged adultery, and in so doing abandon her alimony claim, or waive her privilege and pursue her claim." *Id.* at 131.

In South Carolina, proof of adulterous conduct acts as an absolute bar to alimony when the adultery occurs "before the earliest of these two events: (1) the formal signing of a written property or marital settlement agreement or (2) entry of a permanent order of separate maintenance and support or of a permanent order approving a property or marital settlement agreement between the parties." S.C.Code Ann. § 20–3–130(A) (Supp.1997). None of these events had occurred here.

The parties stipulated that they had been granted immunity from prosecution for adultery. Thus, there was no legal justification for the wife's refusal to answer the questions. Her assertion of the privilege clearly denied the husband legitimate access to information which was relevant on the issues of divorce and her entitlement to alimony. Under these circumstances, we hold the family court did not abuse its discretion by ruling that the immunized wife could not invoke her Fifth Amendment privilege against self-incrimination, refusing to answer questions concerning her alleged adulterous conduct, and continue to seek the affirmative relief of alimony.

## II. Husband's Appeal

### A. Proof of adultery

The family court refused to consider an adverse inference from the invocation of the Fifth Amendment privilege

against self-incrimination. Under the circumstances of this case, we conclude this was error.

In *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the Supreme Court laid to rest the constitutional objection to drawing an adverse inference from the invocation of the Fifth Amendment privilege in a civil case between private parties. *See* Robert Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases*, 91 Yale L.J. 1062, 1111 (1982) ("In a civil suit involving only private parties, no party brings to the battle the awesome powers of the government, and therefore to permit an adverse inference to be drawn from exercise of the [Fifth Amendment] privilege does not implicate the policy considerations underlying the privilege.").

■ Following *Baxter*, the propriety of considering an adverse inference from the invocation of the privilege has gained acceptance in those jurisdictions confronted by the issue.[7] We

---

7. *See Pulawski v. Pulawski*, 463 A.2d 151, 156 (R.I.1983) ("It thus appears that the imposition of sanctions upon a party who seeks affirmative relief and the drawing of adverse inferences against such a party when he refuses to answer relevant questions on self-incrimination grounds are widely accepted in both state and federal courts."). *See also Langley v. Langley*, 617 So.2d 678 (Ala.Civ.App.1993) (asserting Fifth Amendment privilege by parties alleged to have committed adultery in divorce case may be brought to the attention of the trier of the facts, and it raises a presumption that operates against the party claiming the privilege); *Brewer v. Brewer*, 249 Ga. 517, 291 S.E.2d 696, 697 (1982) (stating that "although no inference of guilt can be drawn from a privileged refusal to testify in a criminal case, and although the exercise of the privilege in a civil case cannot be used in a subsequent criminal case against the party, it is permissible to draw an unfavorable inference in a civil case from the privileged refusal to testify in that case."); *Barr v. Barr*, 58 Md.App. 569, 473 A.2d 1300 (1984) (where wife testified to husband's pre-trial admissions of adultery and husband declined to testify, invoking the Fifth Amendment privilege against self-incrimination, the "hotly contested" circumstances and permissible inferences allayed any fears of collusion as well as affirmatively corroborating out of court admissions of adultery); *In re Estate of Trogdon*, 330 N.C. 143, 409 S.E.2d 897 (1991) (the finder of fact in a civil case may use a witness' invocation of his Fifth Amendment privilege against self-incrimination to infer that his truthful testimony would have been unfavorable to him); *Mahne v. Mahne*, 66 N.J. 53, 328 A.2d 225 (1974) (although striking of a defendant's answer upon invocation of privilege in pre-trial setting of civil case may be too harsh, adverse inference may properly be drawn from the invocation); *Palin v. Palin*, 213 A.D.2d 707,

join with these jurisdictions in concluding that it is permissible for the fact finder to draw an adverse inference in a civil case against a party invoking the Fifth Amendment privilege against self-incrimination. Having so concluded, we draw the inescapable conclusion that the trial judge was in error when she refused to consider an adverse inference from the wife's refusal to answer questions concerning her alleged adultery.

There being no legal justification for the wife to invoke the privilege here, as she had already been granted immunity from prosecution, we find the permissible inference to be most compelling. There being no good faith reason for the refusal to testify, we can think of but one logical explanation for her reticence; that is, the answers would have tended to establish the adulterous conduct which the husband sought to prove.

The husband contends the adverse inference, when added to the other evidence, established the fact of the wife's post-separation adultery by a clear preponderance of the evidence. In this regard, the husband argues that an inference adverse to the wife was properly drawn, not only from her refusal to testify, but also from the refusal of the other witnesses. The husband analogizes this circumstance to that of a party who fails to call an available witness to testify. *See McCowan v. Southerland,* 253 S.C. 9, 168 S.E.2d 573 (1969); *Wisconsin Motor Corp. v. Green,* 224 S.C. 460, 79 S.E.2d 718 (1954).

We disagree with the premise that the two situations are analogous, and we have concerns over the appropriateness of drawing an inference adverse to a party based on another witness's invocation of the privilege against self-incrimination in a civil case. *See Levy v. Levy,* 53 A.D.2d 833, 385 N.Y.S.2d

---

624 N.Y.S.2d 630 (1995) (where parties' son testified defendant told him he had a child with a woman other than his wife and defendant refused to answer questions regarding the subject, invoking his Fifth Amendment privilege against self-incrimination, hearing officer properly drew an adverse inference from invocation of privilege to support conclusion adultery had been proved); *Fritz v. Fritz,* 88 A.D.2d 778, 451 N.Y.S.2d 519 (1982) (husband's invocation of Fifth Amendment privilege when asked if he had sexual relations with certain named women permits an adverse inference against him); *Romero v. Colbow,* 27 Va.App. 88, 497 S.E.2d 516 (1998) (wife's "inconsistent display" in the invocation of Fifth Amendment at hearing properly considered in determination of proof of adultery, although adultery was not established in case by " 'clear and positive and convincing' evidence").

314 (1976) (finding trial court erred in drawing negative inference from co-respondent's invocation of privilege against self-incrimination). However, we need not reach this issue, because we conclude that the strong adverse inference drawn from the wife's invocation of the privilege, when added to the remaining testimony, establishes her adultery by a clear preponderance of the evidence.

Having reached this conclusion, it is now necessary to consider what relief is appropriate. We need not modify the basis for the divorce, because granting a divorce to the husband on the grounds of adultery would not dissolve the marriage any more completely. *Smith v. Smith*, 294 S.C. 194, 363 S.E.2d 404 (Ct.App.1987). The finding of adultery does not alter the division of property based on fault, because the parties have stipulated that a 50/50 division is appropriate. Nor does the finding of adultery affect the entitlement to attorney's fees in this case, because the husband only appeals the amount of fees awarded to the wife and not her entitlement to it. *See* discussion *infra* Part II.C.

The one remaining issue affected by this ruling is the right to reimbursement of temporary alimony. Because we have found that the husband proved the wife's adultery by a clear preponderance of the evidence, this requires reimbursement of temporary alimony. The establishment of adultery as a defense to alimony is a bar to all alimony under section 20–3–130(A), and requires the reimbursement of court-ordered temporary spousal support. *Watson v. Watson*, 291 S.C. 13, 351 S.E.2d 883 (Ct.App.1986). This response is further mandated by the family court's ruling that by invoking her privilege against self-incrimination the wife could not seek the affirmative relief of alimony. The right to retain the alimony paid under the temporary order was affirmative relief, and the husband's ability to defend against the wife's right to retain it was adversely affected by her invocation of the privilege against self-incrimination. To allow her to retain it would be to grant her the affirmative relief of alimony.

The amount to be reimbursed is subject to interpretation and proof under the temporary order because the husband was required to make payments to third parties on joint debts instead of paying a sum to the wife. We must, therefore,

remand for a determination of the appropriate amount to be reimbursed.

## B. Allocation of property

■ Next the husband asserts the family court did not effect an equal division of the marital property with its allocation of the marital assets, though the court ordered a 50/50 split. The testimony of the parties on this issue is confusing, and it appears the court ultimately may have misunderstood it. In any event, we conclude the value assigned to the property retained by each party under the court's order is not consistent with an equal division.

The court awarded to each party the marital property in that party's possession. The court also assigned to the property the values contained in the wife's inventory, a conclusion with which we do not disagree. According to the inventory and testimony, the wife was awarded marital property in her possession having a value of $8,826, and the husband retained marital property valued at $1,975. The wife does not contest this assertion on appeal. Clearly, then, an award of all property in each party's possession, together with a 50/50 division of the remaining marital property, results in a disproportionately large award to the wife which does not result in an equal division of marital assets. Therefore, it is necessary to remand this issue for a redetermination of the allocation of assets to effect a 50/50 division of marital property.

## C. Attorney's fees

■ The husband appeals the amount of attorney's fees awarded to the wife on the specific grounds that the wife failed to provide sufficient evidence of the time and labor her attorney devoted to the case, or the fees customarily charged in the locality for similar legal services. *See Glasscock v. Glasscock,* 304 S.C. 158, 403 S.E.2d 313 (1991) (listing the six factors to consider when determining the amount of attorney's fees to award).

During the course of the hearing on the merits, both sides submitted affidavits by stipulation summarizing their bills for attorney's fees. The attorneys discussed the extent of their stipulation during the cross-examination of the wife. In that discussion the husband's attorney acknowledged the agree-

ment as to the admissibility of the attorney's fees affidavits, but nevertheless sought to cross-examine the wife as to the *Glasscock* factors to see if her understanding of the amount of fees earned by her attorney was the same as that of her attorney. On appeal, the wife argues that the parties intended by their agreed admission of opposing affidavits to stipulate to the amount and reasonableness of the attorney's fees, leaving to the family court the sole issue of entitlement.

The wife's attorney's fees affidavit consists of two paragraphs which provide in summary form that the wife's attorney expended 57.5 hours on the case at the rate of $175 per hour, for a total attorney's fee of $10,062.50. In the final order and decree of divorce, the family court found that the wife had paid her trial attorney a $5,000 retainer, had paid a previously retained attorney $500, and had incurred total fees and costs in the case of $10,339.90. The court recognized the good standing of counsel, and the time "necessarily devoted to prepare and try such a case." The court awarded the wife substantially all of the requested fee, in the sum of $10,000, basing the award on these findings and the fault of the husband. In the order denying reconsideration, the court declined to amend the decree to set forth more specific facts in support of the award. The court made the additional finding that the attorneys had agreed on the record to submit attorney's fees affidavits, thereby precluding a post-trial objection to their sufficiency.

■ "A stipulation is an agreement, admission or concession made in judicial proceedings by the parties thereto or their attorneys. Stipulations ... are binding upon those who make them." *Kirkland v. Allcraft Steel Co., Inc.,* 329 S.C. 389, 392, 496 S.E.2d 624, 626 (1998) (citation omitted); *see also Corley v. Rowe,* 280 S.C. 338, 312 S.E.2d 720 (Ct.App.1984).

■ "When counsel enter into an agreed stipulation of fact as a basis for decision by the court, both sides will be bound by such agreed stipulation, and the court will not go beyond such stipulation to determine the facts upon which the case is to be decided." *Belue v. Fetner,* 251 S.C. 600, 606, 164 S.E.2d 753, 755 (1968); *see also Winchell v. Winchell,* 291 S.C. 321, 353 S.E.2d 309 (Ct.App.1987) (holding family court did not err

in relying on agreement between husband and wife as to division of personal property).

However, it is generally recognized that "[s]tipulations will not be so construed as to give the effect of an admission of fact obviously intended to be controverted or the waiver of a right not plainly intended to be relinquished." *Suddeth v. Knight*, 280 S.C. 540, 544, 314 S.E.2d 11, 14 (Ct.App.1984). "A stipulation will not be enforced if it is contradictory and confusing and stands in the way of a true determination of the parties' rights or where it is subject to different constructions and there is a disagreement as to what was intended to be included therein." *Id.*

The record does not support a conclusion that the parties entered into a stipulation regarding the required proof of attorney's fees beyond the agreement to allow affidavits of counsel to be admitted without objection. It appears the wife's attorney was under the impression that each side had stipulated that the affidavits were sufficient to establish the amount of attorney's fees reasonably incurred, leaving only the entitlement to an award in controversy. However, it does not appear from the record that the husband's attorney had the same view of the agreement. Thus, the husband's attorney cross-examined the wife concerning her understanding of the amount of time expended by her attorney, the beneficial results obtained, and all of the other *Glasscock* factors. Though the family court concluded in its order on reconsideration that the parties had agreed on the record to submit attorney's fees affidavits, this finding alone does not supplant the requirement that the proof, by affidavit or otherwise, establish a basis for satisfying the factors required to make the award.

In determining *whether* to award attorney's fees, the court should consider each party's ability to pay his or her own fee; the beneficial results obtained by the attorney; the parties' respective financial conditions; and the effect of the attorney's fee on each party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 415 S.E.2d 812 (1992); *Doe v. Doe*, 324 S.C. 492, 478 S.E.2d 854 (Ct.App.1996). In determining the *amount* of attorney's fees to award, the court should consider the nature, extent, and difficulty of the services rendered; the

time necessarily devoted to the case; the professional standing of counsel; the contingency of compensation; the beneficial results obtained; and the customary legal fees for similar services. *Glasscock v. Glasscock,* 304 S.C. 158, 403 S.E.2d 313 (1991); *Doe v. Doe,* 324 S.C. 492, 478 S.E.2d 854 (Ct.App. 1996).

The entitlement of the wife to an award of attorney's fees is not appealed, and is therefore the law of the case. *Stone v. Salley,* 244 S.C. 531, 137 S.E.2d 788 (1964) (the unappealed portion of a trial court's judgment presents no issue for determination by the reviewing court and constitutes to such extent the law of the case). However, the order awarding the fee does not set forth specific findings of fact on each of the six required factors to be considered in determining the amount of the fee pursuant to *Glasscock.* The conclusory information of total time expended and hourly rate charged which was set forth in the affidavit is insufficient to provide the evidentiary basis necessary to support the award, even with the wife's testimony confirming the amounts actually paid. *See Johnson v. Johnson,* 288 S.C. 270, 341 S.E.2d 811 (Ct.App.1986) (one-half page statement of estimated time devoted to case, totaling 90 hours, coupled with vague testimony of attorney as to time and labor, found insufficient to support award of attorney's fees).

Our case law and court rules make clear that when a contract or statute authorizes an award of attorney's fees, the trial court must make specific findings of fact on the record for each of the required factors to be considered. Rule 26(a), SCRFC ("An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision."); *Blumberg v. Nealco, Inc.,* 310 S.C. 492, 427 S.E.2d 659 (1993) (attorney's fees award pursuant to contract); *Atkinson v. Atkinson,* 279 S.C. 454, 309 S.E.2d 14 (Ct.App.1983) (per curiam) (attorney's fees award pursuant to divorce decree authorized by statute). Generally, if on appeal there is inadequate evidentiary support for each of the factors, the appellate court should reverse and remand so the trial court may make specific findings of fact. *Blumberg v. Nealco, Inc.* 310 S.C. 492, 427 S.E.2d 659 (1993). However, when an order from the family court is issued in violation of Rule 26(a), SCRFC, the

appellate court "may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence." *Holcombe v. Hardee*, 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991).

In this case, the record on appeal is not sufficient for us to make our own findings. Accordingly, we reverse and remand this issue with specific instructions to allow additional evidence on the issue of the amount of attorney's fees, and to make specific findings of fact as to each of the six *Glasscock* factors.

## CONCLUSION

In summary, the ruling of the family court denying the wife the affirmative relief of alimony is affirmed. For the reasons stated above, the ruling of the court denying reimbursement of temporary alimony is reversed and the issue remanded for further proceedings to determine the proper amount of temporary alimony to be reimbursed. The award of equitable division on an equal basis is affirmed, but the actual division of property is reversed with instructions to reallocate the property so as to effect a 50/50 division of assets. The award of attorney's fees to the wife is reversed and remanded for further proceedings consistent with this opinion. The case is also remanded for further proceedings regarding the disposition of the husband's military retirement benefits, as requested by the parties.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

HEARN, J., concurs, and ANDERSON, J., dissents in a separate opinion.

ANDERSON, Judge (dissenting):

I respectfully dissent from the majority's conclusion in regard to the efficacy of the Fifth Amendment to the issues in this case.

As to the invocation of the Fifth Amendment privilege by the Wife, I disagree with the reasoning and analysis of the issue by the majority. Because the Wife asserts her Fifth Amendment privilege, the majority bludgeons her with an adverse inference *and* a denial of any affirmative relief. Sim-

plistically put, this judicial "Scud Missile" is inappropriate when juxtaposed to the exercise of a constitutional right.

The rule adopted in this case turns the Fifth Amendment on its head by requiring the person to forfeit all offensive and defensive rights in the civil venue. The iniquitous result of the rule adopted by the majority is to eradicate all standing in the civil venue by a person claiming the Fifth Amendment constitutional privilege. Such a rule is infected with a prosecutorial mentality that persons taking the Fifth Amendment lose other citizenship rights. Admittedly, the rule spawned by the majority eliminates confusion but eviscerates constitutional protections. To strip a civil litigant of all protection in the civil venue as a consequence of taking the Fifth Amendment is a judicial exodus from constitutional principles that is illogical.

Here, immunity was given and probably no Fifth Amendment privilege exists. The majority chooses to write on the Fifth Amendment privilege, thus forcing the issue.

It is apodictic the grant of absolute immunity vitiates any Fifth Amendment privilege. However, in that regard it is essential to evaluate the type of immunity given. In *State v. Thrift*, 312 S.C. 282, 440 S.E.2d 341 (1994), the South Carolina Supreme Court edified the bench and bar in regard to the bifurcation of immunity, *i.e.*, (1) use immunity and (2) transactional immunity.

In dissonance to the writing penned by the majority, I do not believe a pandemic rule is extant on this issue. There is a significant body of law in this country rejecting the position adopted by the majority. The better rule is articulated in *Brewer v. Brewer*, 249 Ga. 517, 291 S.E.2d 696 (1982). In *Brewer*, the Georgia Supreme Court held:

> *Simpson v. Simpson*, 233 Ga. 17, 209 S.E.2d 611 (1974), holds that although no inference of guilt can be drawn from a privileged refusal to testify in a criminal case, and although the exercise of the privilege in a civil case cannot be used in a subsequent criminal case against the party, it is permissible to draw an unfavorable inference in a civil case from the privileged refusal to testify in that case.

*Brewer*, 291 S.E.2d at 697. *See also Robinson v. Robinson*, 328 Md. 507, 615 A.2d 1190, 1194 (1992) ("[W]here a party in a civil proceeding invokes the Fifth Amendment privilege

against self incrimination in refusing to answer a question posed during that party's testimony, the fact finder is permitted to draw an adverse inference from that refusal."); *Molloy v. Molloy*, 46 Wis.2d 682, 176 N.W.2d 292 (1970) (although a person may invoke Fifth Amendment in civil case in order to protect himself from use of such evidence against him in criminal action ... an inference against his interest might be drawn; since inference is irresistible and logical in such circumstances, court may as matter of law draw the inference); *Id.* (such an inference is based upon implied admission that truthful answer would tend to prove witness had committed the criminal act or might constitute a criminal act; the inference is not based upon the condition the witness is seeking relief or ought not to receive relief because he has invoked the privilege).

The majority cites the Georgia case of *Master v. Savannah Sur. Assocs., Inc.*, 148 Ga.App. 678, 252 S.E.2d 186 (1979). *Master* is a 1979 Georgia Court of Appeals case and certainly is not controlling precedent in the face of *Brewer, supra.*

A reasonable and commonsensical approach is to invoke an adverse inference, but not to emasculate all rights of the person claiming the Fifth Amendment privilege. The adverse inference drawn from the invocation of the Fifth Amendment privilege should not be followed with the draconian result of denial of affirmative relief or affirmative defense.