762 S.E.2d 30

**Coleen G. MICK–SKAGGS, Appellant,**

v.

**William B. SKAGGS, Respondent.**

**Appellate Case No. 2011–195268.**

**No. 5229.**

Court of Appeals of South Carolina.

Heard Jan. 6, 2014.

Decided May 14, 2014.

Rehearing Denied Aug. 1, 2014.

Withdrawn, Substituted and Refiled Aug. 1, 2014.

---

**5.** In light of our result, the award of attorney's fees to Immedion is likewise reversed.

Nicole Nicolette Mace, of the Mace Law Firm, of Myrtle Beach, for Appellant.

William B. Skaggs, pro se, for Respondent.

WILLIAMS, J.

On appeal, Coleen Mick–Skaggs (Wife) claims the family court erred in (1) denying Wife's request for a divorce on the grounds of William Skaggs' (Husband) adultery; (2) denying her request for alimony when Husband failed to prove she committed adultery; (3) improperly admitting certain photographs into evidence; and (4) improperly requiring Wife to pay her own attorney's fees. We affirm.

## FACTS/PROCEDURAL HISTORY

Husband and Wife married on February 9, 1991. After approximately eighteen years of marriage, the parties separated in October 2009. Wife then filed for divorce in December 2009 on the grounds of Husband's adultery. Husband timely answered and counterclaimed, accusing Wife of adultery. Husband subsequently amended his pleadings to request a divorce based on one year's continuous separation. At the time of the parties' divorce, Wife was forty-seven years old and Husband was forty-nine years old.

Prior to the final hearing, the family court issued a temporary order requiring Husband to maintain health insurance for Wife and to pay Wife $1,500 in alimony per month. By the date of the final hearing, the parties reached an agreement on the equitable division of marital property and the division of marital debt. The primary issues to be decided at the final hearing were adultery and alimony.

Regarding alimony, Wife claimed she requested alimony because she only received $982 per month for her Social Security disability, but her prescriptions were at least $1,000 per month. Wife stated she and Husband both worked

their entire marriage until Wife was forced to retire from her position as a paralegal in September 2008 due to her deteriorating physical condition. Specifically, she testified she suffers from an inoperable spinal tumor, fibromyalgia, degenerative disc disease, chronic pulmonary disease, rheumatoid arthritis, depression, anxiety, peripheral nerve damage, and severe eye damage resulting from a stroke.

Husband questioned the extent of Wife's disability. He highlighted how she continued to ride horses and compete in horse shows after quitting work and applying for disability benefits. Husband presented Wife with certain photographs of her at local horse shows. Wife responded almost all of the pictures were prior to receiving disability benefits, and she continued to be involved in riding and caring for horses because she was "trying to hold on to hope" when dealing with her deteriorating physical condition.

To support his adultery claim, Husband introduced certain text messages sent from Wife's phone. Husband read the following text, which Wife asserted was sent by one of her friends from her phone as a joke. It read:

I'm at Aynor Bar now.... I'm dancing with about half a dozen and French kissing them all down to the floor, and they don't kiss like small-mouth brim. They actually know how to kiss. LOL. Got a couple off-duty P.D. officers here, too. Gonna let me (sic) strip search my ass if they want to.... I love being single and free. Leaving for Texas for cutting horse congress, and I'm gonna have so much fun roping me a cowboy who knows what a real man is all about. 6–2, thirty-five years old....

Husband also called William Russo, a co-worker and friend of Husband, to support his allegations of Wife's adultery. Russo stated that on the night of Wife's birthday, he arrived at the Cattle Company bar around midnight. Upon walking into the bar, he claimed he saw Wife with a couple and another male. Upon Husband's request, Russo stated he stayed outside the bar for approximately an hour and a half until the bar closed at 1:30 a.m. At that time, Russo observed Wife exit the bar with the same male. Russo stated, "At one point, she had her head in his lap asleep or whatever and, you

know, there was certainly some hanging on each other while they were on the front porch. Some affection."

Russo testified Wife eventually took a cab home, and the male followed the cab in his separate vehicle. Russo observed the male enter Wife's home. Russo stated he waited outside Wife's house for approximately twenty-five or thirty minutes, and the male did not leave while Russo was there. Husband corroborated Russo's testimony and stated that on the morning after Wife's birthday, he drove by Wife's home at 5:30 a.m., and an unoccupied car was still parked outside Wife's home.

At the conclusion of Russo's testimony, Husband sought to introduce into evidence several photographs taken by Russo that evening. Wife's counsel objected to the pictures on the grounds they were poor quality and unfairly depicted the scene. The family court admitted the photographs over Wife's objection, ruling, "I think it's admissible, I honestly can't tell what it is, you know. He says what it is, and I'm not—I'll overrule the objection. [Russo] took the picture. That's what it—it is what it is."

Mary Katherine Fisher, who boards horses at the parties' barn, corroborated Russo's testimony. She testified she observed Wife kissing the same male outside the Cattle Company bar on the night of Wife's birthday. In an effort to discredit Fisher's testimony, Wife cross-examined Fisher, who admitted to filing two actions against Wife, which were ultimately dismissed, prior to the final hearing.

Husband testified regarding the allegations of his adultery made by Wife. Husband denied cheating on Wife, claiming Wife accused him of having an affair with at least seventeen different women. However, when questioned by Wife's counsel, Husband acknowledged he had feelings for another woman, Destiny Athey, and even stated, "Yeah, the lady I had an affair with . . . ."

In response to Husband's allegations of adultery, Wife recounted the night of her birthday. Wife testified she went to Applebee's Neighborhood Bar and Grill with some friends for dinner and then went to the Cattle Company bar for drinks. She confirmed she "started off with red wine . . . had a couple of beers, and then when [her] other friends got there,

they bought [her] a couple of shots." Wife claimed that at the end of the night, she called a cab and went home by herself. She denied the male at the bar stayed at her home that evening.

In support of Wife's allegations against Husband, Wife called Katherine Bujarski, another person who boards horses at Husband and Wife's barn, to testify. Bujarski stated she observed Husband and Debbie Scott (Scott) sitting together at a horse show within the last year. Bujarski testified Husband was rubbing Scott's lower back underneath her shirt. Tamara Tindal, a private investigator, also testified at the final hearing regarding her observations of Husband and Scott. Tindal was hired by a third party, Larry Scott, to conduct surveillance on his wife. Tindal stated she observed Scott and Husband alone on at least five occasions at Husband's barn within the two weeks prior to trial. All of these occurrences were in the evening, with two of these meetings occurring from 11:30 p.m. until 12:59 a.m. and 12:05 a.m. until 12:40 a.m. Tindal stated Husband and Scott were inside the barn [1] during her surveillance, so she did not know whether Husband committed adultery during those times.

At the conclusion of all the testimony, the family court approved the parties' settlement agreement. The court granted the parties a divorce based on one year's continuous separation and stated,

> I'm doing it on these grounds because as I see the evidence, we have evidence of adultery, at least inclination and opportunity on both sides of the case ... which means that we have, as I see it, uncorroborated evidence of adultery on both sides. For a divorce to be granted on the grounds of adultery, as I understand the law, it needs to be corroborated.

In denying Wife's claim to alimony, the court held, "I don't think adultery as a bar to alimony had to be corroborated as does adultery as a ground for divorce." The court then recounted Russo's testimony and found it to be credible proof that Wife committed adultery and should be barred from receiving alimony. After the family court issued a written

---

1. Wife's daughter confirmed that Husband's living quarters were inside the barn.

order confirming its oral ruling, Wife timely appealed. Husband did not submit a Respondent's brief.

## STANDARD OF REVIEW

"In appeals from the family court, [appellate courts] review[ ] factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). "[W]hile retaining the authority to make our own findings of fact, we recognize the superior position of the family court judge in making credibility determinations." *Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011) (footnote omitted). The burden is upon the appellant to convince the appellate court that the preponderance of the evidence is against the family court's findings. *Id.* "Stated differently, de novo review neither relieves an appellant of demonstrating error nor requires us to ignore the findings of the family court." *Id.* at 388–89, 709 S.E.2d at 654 (italics omitted).

## ISSUES ON APPEAL

1. Did the family court err in denying Wife's request for a divorce on the grounds of Husband's adultery?
2. Did the family court err in finding Wife committed adultery, and thus, in barring Wife from receiving alimony?
3. Did the family court err in admitting certain photographs into evidence?
4. Did the family court err in requiring Wife to pay her own attorney's fees?

## LAW/ANALYSIS

### 1. Grounds for Divorce

Wife claims the family court erred in granting the parties a no-fault divorce because she presented sufficient evidence that Husband committed adultery. We agree Wife presented sufficient evidence to establish Husband's adultery, but we find the family court acted within its discretion in awarding the parties a no-fault divorce.

In its final order, the family court held Husband and Wife were entitled to a divorce on the ground of one year's continuous separation. Neither party claims the one year's separa-

tion was an improper ground for divorce on appeal; rather, Wife argues the family court should have granted her a divorce based on Husband's adultery. Although Husband and Wife presented evidence at trial that each spouse engaged in extramarital conduct during the course of their marriage, the family court heard this evidence and chose to instead grant the parties a no-fault divorce. Aware of our de novo review, we find the family court was in the best position to assess the parties' and witnesses' testimony as well as the evidence presented in determining which ground for divorce was most appropriate under the circumstances. *See Lewis,* 392 S.C. at 389, 709 S.E.2d at 654 ("[D]e novo review neither relieves an appellant of demonstrating error nor requires us to ignore the findings of the family court."); *see also Lucas v. Lucas,* 279 S.C. 121, 123, 302 S.E.2d 863, 864 (1983) (finding it was within the family court's discretion to deny a divorce on one ground and grant it on another ground).

Further, because the granting of a divorce to Wife on the ground of adultery would not have dissolved the marriage any more completely, we need not alter the family court's decision on this issue. *See Griffith v. Griffith,* 332 S.C. 630, 642, 506 S.E.2d 526, 532 (Ct.App.1998) (choosing not to modify family court's decision to grant parties a no-fault divorce despite each party's claim of adultery against the other when modifying the basis for the divorce would not dissolve the marriage any more completely); *Smith v. Smith,* 294 S.C. 194, 197, 363 S.E.2d 404, 406 (Ct.App.1987) (noting husband never contested family court's decision to grant wife a divorce on the ground of one year's separation and upholding family court's denial of husband's counterclaim for a divorce based on wife's adultery when granting the divorce on adultery would not have dissolved marriage any more completely).

## 2. Wife's entitlement to alimony

Next, Wife contends the family court erred in denying her request for alimony because Husband did not sufficiently demonstrate she committed adultery. We disagree.

In support of its decision to deny Wife alimony, the family court cited to the testimony of Wife, Russo, and Fisher as evidence of Wife's adultery. The family court then held, "The

uncorroborated testimony of adultery is sufficient to bar [Wife] from receiving alimony, although insufficient to grant a divorce on the grounds of adultery." Although we agree with the family court's denial of alimony to Wife, we disagree with the family court's statement of the law. Further, we find there is sufficient corroborating testimony.

■ Corroboration is typically required in divorce actions, but this rule may be relaxed when it is evident that collusion does not exist. *See McLaughlin v. McLaughlin,* 244 S.C. 265, 270, 136 S.E.2d 537, 539 (1964) (stating corroboration is typically necessary in divorce actions but may be relaxed when it is evident that collusion does not exist); *Harvley v. Harvley,* 279 S.C. 572, 574, 310 S.E.2d 161, 162 (Ct.App.1983) (holding corroboration of testimony is normally required to sustain a ground for divorce, although the requirement can be relaxed when the possibility of collusion is not apparent). In this instance, there was no collusion between the parties as evidenced by the contested nature of the divorce. *See McLaughlin,* 244 S.C. at 271, 136 S.E.2d at 540 (acknowledging some states' adoption of a rule that permits courts to grant a divorce based on the plaintiff's uncorroborated testimony in contested cases and stating that only slight corroboration is necessary in certain contested cases in our state).

Based on our review of the record, we find Husband presented sufficient corroborating testimony. *See RGM v. DEM,* 306 S.C. 145, 149–50, 410 S.E.2d 564, 567 (1991) (finding wife committed adultery for purposes of barring alimony despite family court's finding that each party was entitled to a divorce based on one year's continuous separation). Although we decline to modify the grounds for divorce, we concur with the family court's conclusion that Husband presented a clear preponderance of evidence of Wife's adultery to bar Wife from receiving alimony. We find that based upon the testimony of Russo, Husband, and others that Wife committed adultery on the night of her birthday. While Wife would only admit she went to the bar and consumed a substantial amount of alcohol that evening, several witnesses observed Wife being affectionate with a man throughout the course of that evening. The evidence shows this same man followed Wife home in the early morning hours, and after being invited inside by Wife, entered Wife's house. We also find Wife's subsequent text messages

are circumstantial evidence that indicate a continued disposition to commit adultery. *See Perry v. Perry,* 301 S.C. 147, 150, 390 S.E.2d 480, 481–82 (Ct.App.1990) (finding circumstantial evidence over an extended period of time indicating wife's infidelity was sufficient to prove wife was disposed to commit adultery because the adultery could be inferred from the circumstances). We hold the foregoing testimony shows inclination and opportunity and is "sufficiently definite to identify the time and place of offense and the circumstances under which it was committed." *See Loftis v. Loftis,* 284 S.C. 216, 218, 325 S.E.2d 73, 74 (Ct.App.1985).

Accordingly, we affirm the family court's decision to deny Wife alimony. We also affirm the family court's order as it pertains to reimbursement for temporary alimony. *See Griffith,* 332 S.C. at 642, 506 S.E.2d at 532 (holding the establishment of adultery as a defense to alimony is a bar to all alimony and requires the reimbursement of court-ordered temporary alimony).

## 3. Admission of Photographs

■ Wife also claims the family court erred in permitting Husband to introduce certain photographs into evidence because they were poor quality and did not accurately portray the scene.[2] We disagree.

■ To justify reversal based on the admission or exclusion of evidence, the complaining party must establish both error and resulting prejudice. *Divine v. Robbins,* 385 S.C. 23, 37, 683 S.E.2d 286, 293 (Ct.App.2009).

We find these photographs were relevant to Husband's claim of adultery against Wife. *See* Rule 401, SCRE (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determi-

---

2. Wife also argues on appeal the photographs were not properly authenticated pursuant to Rule 901, SCRE, nor were they admissible duplicates as envisioned by Rules 1001 and 1003, SCRE. Wife never raised these grounds to the family court; thus, to the extent she raises these grounds in her brief, we decline to address them on appeal. *See Bodkin v. Bodkin,* 388 S.C. 203, 227, 694 S.E.2d 230, 243 (Ct.App.2010) (holding an issue may not be raised for the first time on appeal but must be raised to and ruled upon by the family court to be preserved for appeal).

nation of the action more probable or less probable than it would be without the evidence."). Although Wife claims these photographs were unfairly prejudicial in violation of Rule 403, SCRE, we find the statements of Wife's counsel and the family court prove otherwise. Russo, the witness who took these photographs, Wife's counsel, and the family court all acknowledged the quality of the photographs was poor, and it was impossible to discern what the photographs actually depicted. As a result, we fail to see how Wife was prejudiced by the admission of these photographs. Furthermore, this was an action in equity and there was no jury. The likelihood that the family court, as the sole factfinder, was improperly persuaded by the admission of these photographs is negligible. Accordingly, we affirm the family court on this issue.

## 4. Attorney's Fees

Last, Wife claims the family court erred when it ordered Wife to pay all of her attorney's fees. Wife contends Husband's financial condition was far superior to hers, and as a result, the family court should have ordered Husband to pay her attorney's fees. We disagree.

The family court should first consider the following factors as set forth in *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992), in deciding whether to award attorney's fees and costs: "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) effect of the attorney's fee on each party's standard of living." *Fitzwater v. Fitzwater*, 396 S.C. 361, 370, 721 S.E.2d 7, 12 (Ct.App.2011). In so doing, the family court should set forth specific findings of fact on the record about each of the required factors from *E.D.M. See Griffith*, 332 S.C. at 646, 506 S.E.2d at 534–35 (citing Rule 26(a), SCRFC, and highlighting requirement of family court to make specific findings of fact on the record about each of the required factors from *E.D.M.*, but noting the appellate court may make its own findings of fact in accordance with the preponderance of the evidence if the record is sufficient).

Although the family court failed to set forth findings of fact in support of its decision, we find the family court acted within its discretion in requiring the parties to pay their own attorney's fees. The family court found both parties were entitled to a divorce based on one year's continuous separation. This ruling neither benefits nor harms either party. The family court found Wife was not entitled to alimony, which we affirm on appeal. Further, because Wife failed to include her attorney's fees affidavit or either party's financial declarations in the record on appeal, we are unable to discern exactly how much she incurred in attorney's fees or how those fees will impact her standard of living or her current financial condition. *See Harkins v. Greenville Cnty.*, 340 S.C. 606, 616, 533 S.E.2d 886, 891 (2000) (finding it impossible to evaluate the merits of certain issues because the appellant failed to include the relevant material in the record on appeal); *See Perry v. Perry*, 301 S.C. 147, 151, 390 S.E.2d 480, 482 (Ct.App.1990) (stating the appellant must provide "a sufficient record on appeal from which this [c]ourt can make an intelligent review"). We are aware of Wife's claim that she only receives disability, and she has very few assets from which to pay her attorney's fees.

However, without further proof that the family court acted improperly in requiring the parties to pay their own attorney's fees, we affirm the family court's decision on this issue.

**CONCLUSION**

Based on the foregoing, we affirm the family court's order finding Husband and Wife are entitled to a divorce on the ground of one year's continuous separation. We also affirm the family court's decision to deny Wife's request for alimony, its admission of certain photographs into evidence, and its ruling on each party's entitlement to attorney's fees. Accordingly, the family court's decision is

**AFFIRMED.**

SHORT and GEATHERS, JJ., concur.