**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Debbie Bowers Murphy, Appellant,

v.

Thomas Hayne Murphy, Respondent.

Appellate Case No. 2015-000676

Appeal From Newberry County
Peter R. Nuessle, Family Court Judge

Unpublished Opinion No. 2017-UP-318
Heard April 11, 2017 – Filed July 26, 2017
Withdrawn, Substituted, and Refiled September 6, 2017

**AFFIRMED IN PART AND REVERSED IN PART**

William Chadwick Jenkins, of Pope & Hudgens, P.A., of Newberry, for Appellant.

S. Jahue Moore, Jr., of Moore Taylor Law Firm, P.A., of West Columbia, and Katherine Carruth Goode, of Winnsboro, for Respondent.

**PER CURIAM:** Debbie B. Murphy (Wife) appeals the family court's order granting her a divorce from Thomas H. Murphy (Husband), arguing the family court erred by failing to (1) adopt her proposed equitable distribution plan, (2) award her alimony,

(3) award her attorney's fees and costs, and (4) grant a divorce on the ground of physical cruelty.  We reverse the family court's denial of alimony but otherwise affirm.

## I.

The Murphys married in 2003, when Husband was forty-nine and Wife forty-four. It was Wife's second marriage, Husband's third.  They had no children together. They separated in February 2013, and Wife began this action the next month, seeking a divorce based on physical cruelty, equitable distribution, alimony, and attorney's fees.  The family court granted Wife temporary possession of the marital home and ordered her to pay all associated costs apart from a second mortgage payment, which Husband was ordered to pay.  The family court ordered Husband to pay $3,125 per month in temporary alimony and $5,000 toward Wife's attorney's fees.

At the August 2014 final hearing, Wife testified she injured her knees in 2004 while working as a teacher and was out of work for about a year.  Wife's employer, Newberry County School District, accommodated her without reducing her salary. According to Wife, she still had problems with her knees despite multiple surgeries and physical therapy.  Wife continued working until April 2014, when she was awarded long-term disability due to her knee condition.  She testified she did not intend to return to work.[1]  Dr. Phillip Milner testified he treated Wife after her 2004 knee injury.  Dr. Milner did not see Wife from 2005 until 2011, when he diagnosed her with advanced arthritis of the knees.  Dr. Milner opined Wife would soon need double knee replacement surgery, without which she could only return to work if allowed to sit ninety percent of the time.

The parties' relationship was rocky.  Both alleged acts of aggression and rage toward the other.  The denouement of their marriage appeared to be a fight that erupted on February 17, 2013, after they returned home from dinner.  Tempers were frayed, then lost.  Husband hit Wife with a loaf of bread.  A scuffle ensued, and they both fell to the floor.  Wife sustained a cut to her head, and it was later discovered she had fractured her wrist.  Husband was charged with Criminal Domestic Violence (CDV) of a High and Aggravated Nature.

---

[1] Wife also asserted she suffered from fibromyalgia, high blood pressure, post-traumatic stress disorder, depression, and lupus; however, she did not submit any medical evidence supporting these diagnoses.

Wife testified she contributed $99,877 of non-marital funds toward the $365,000 purchase of the marital home in 2007. Wife admitted there was no agreement she would recover her contribution in the event of divorce.[2]

Wife declared $6,038 per month in income, consisting of $2,913 in disability payments and $3,125 in alimony. Wife testified she had applied for Social Security disability benefits, which would include Medicare coverage. She testified she had earned $55,699 per year, or $4,642 per month, as a teacher. Wife expected her monthly income to decrease if her Social Security application was approved.

Wife testified Husband earned over $100,000 per year during their marriage. She submitted evidence that showed he earned between $100,000 and $118,000 per year. Husband testified that during the marriage his annual salary varied between $80,000 and $110,000. He admitted he made around $118,000 for the year ending in May 2013.

Wife sought credit for decreasing the marital home's first mortgage balance by over $13,000 while the divorce action was pending, and $2,214 she paid for landscaping and maintenance, as well as the $99,877 down payment. To account for these credits, she asked the family court to award her eighty-five percent of the proceeds from the eventual sale of the marital home.

The Murphys' marital estate had a net value of $325,507 at the final hearing, $192,778 of which was equity in the marital home. Husband had a non-marital net worth of $23,514, as well as a non-marital vested retirement benefit that will provide him $200 per month once he reaches age sixty-five. Wife's non-marital net worth was $240,918.

Wife also requested attorney's fees totaling $23,090, $20,090 of which was outstanding and $3,000 of which would reimburse Wife for a payment she previously made. The $5,000 Husband had been ordered to pay Wife in temporary fees was not included in the $23,090 sought.

In its February 2015 Final Order, the family court granted the Murphys a divorce on the ground of one year's separation. It found, "Prior to the commencement of [the

---

[2] The family court found Wife's funds were transmuted into marital property, and because Wife did not challenge this finding, it is the law of the case. *See Matter of Morrison*, 321 S.C. 370, 372, 468 S.E.2d 651, 652 (1996) ("This ruling is the law of the case since it is not contested on appeal.").

final] hearing, [Wife] moved to supplement her pleadings to allege a cause of action for divorce on the ground of a one year continuous separation." The family court acknowledged the Murphys' health problems but found both were "in fairly good physical and mental condition for their age." The court found Wife's gross monthly income was $6,038 while Husband's was $7,871. It also noted Wife's employer accommodated her after her knee injuries, and knee surgery would likely allow Wife to return to work as a teacher and earn an income similar to what she earned while married to Husband. The family court found Wife had significant non-marital assets that would assist with future expenses, while Husband had fewer non-marital assets and would need to satisfy future expenses through continued employment. Regarding marital misconduct, the family court found both parties bore responsibility, noting, "The details of [Husband's] [CDV] charge are unclear at best. . . . Both parties testified that the other was at fault. Both parties testified that the other engaged in marital misconduct in the past to include physical and mental abuse."

The family court found Husband and Wife contributed equally to acquisition of the marital estate and concluded an equal division was "a fair and reasonable apportionment." It ordered the sale of the marital home, the proceeds of which would first be used to pay the marital debt and then divided equally between the parties. The family court terminated Husband's temporary alimony obligation and allowed him to live in the marital home until its sale, provided he pay all associated costs. Finally, the family court denied Wife's requests for alimony and attorney's fees.

Wife moved to reconsider, arguing the family court erred by failing to award her a special equity in the marital home or, alternatively, a larger percentage of the marital estate. Wife also argued the family court erred by failing to award her alimony and attorney's fees and not granting her a divorce on the ground of physical cruelty. After a hearing, the family court denied Wife's motion. This appeal followed.

## II.

Our scope of review in this equity case is de novo, and we may find the facts based on our view of the greater weight of the evidence. *See Buist v. Buist*, 410 S.C. 569, 574, 766 S.E.2d 381, 383 (2014). This does not, however, remove appellant's burden to prove error or diminish our recognition that the trial court had the advantage of seeing and hearing the witnesses. *Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 652 (2011). We will only disturb a family court's decisions regarding equitable division and alimony if they amount to an abuse of discretion, which means they

derive from an error of law or lack adequate factual support. *Stoney v. Stoney*, 417 S.C. 345, 368-69, 790 S.E.2d 31, 43 (Ct. App. 2016).

## A.

Wife argues the family court erred in its award of equitable distribution. She asserts she is entitled to a larger share of the marital estate due to her contribution toward the purchase of the marital home, Husband's physical abuse, her inability to work, and Husband's non-marital assets.

"[E]quitable distribution is based on a recognition that marriage is, among other things, an economic partnership." *Johnson v. Johnson*, 296 S.C. 289, 293, 372 S.E.2d 107, 109 (Ct. App. 1988). When a marriage ends, division of the property acquired is determined by the guiding equities set forth in section 20-3-620 of the South Carolina Code (2014). These statutory factors are waypoints to ensure the marital estate is distributed "in a manner which fairly reflects each spouse's contribution to the economic partnership and also the relative effect of ending that partnership on each of the parties." *Johnson*, 296 S.C. at 298, 372 S.E.2d at 112. The discretion to weigh these factors rests with the family court; on appeal we review only the overall fairness of the division. If the balance struck is fair, we must uphold it. *Crossland v. Crossland*, 408 S.C. 443, 456, 759 S.E.2d 419, 425-26 (2014).

Although Wife contributed a substantial sum toward the purchase of the marital home, it would be improper to simply award her a "credit" for the contribution. *See Dawkins v. Dawkins*, 386 S.C. 169, 173, 687 S.E.2d 52, 54 (2010) (overruling a prior case "to the extent it may be read to allow a family court to separate and subtract [a financial contribution] from the marital estate and then award this 'special equity' to the [contributing party] in addition to his or her portion of the court-ordered division of the marital estate"), *abrogated on other grounds by Lewis v. Lewis*, 392 S.C. 381, 709 S.E.2d 650 (2011). Instead, Wife's contribution is simply "one of many factors to be considered and does not alone overshadow all of the other relevant factors." *Crossland*, 408 S.C. at 458, 759 S.E.2d at 427. We take Wife's direct financial contribution into account "in determining the percentage division of the marital estate." *Pittman v. Pittman*, 407 S.C. 141, 153, 754 S.E.2d 501, 507 (2014).

After considering Wife's capital contribution in light of the statutory apportionment factors, we find the family court's division fair. *See* § 20-3-620(B) (enumerating the factors a court must consider in apportioning a marital estate). Although Wife contributed almost $100,000 toward the purchase of the marital home, Husband consistently earned over $100,000 per year during their marriage while she earned

$55,699. Over the course of the ten-year marriage, this discrepancy in earnings amounts to over $400,000. Wife's capital contribution was counterbalanced by Husband's greater contributions to the marital estate. *See* § 20-3-620(B)(3). Consequently, Wife's contribution does not warrant modifying the family court's distribution. *See Teeter v. Teeter*, 408 S.C. 485, 496, 759 S.E.2d 144, 150 (Ct. App. 2014) ("Although Husband is entitled to recognition of this nonmarital contribution, we decline to modify the family court's equitable division ratio of the marital estate. Husband is not entitled to a 'refund' of his down payment contribution.").[3]

Furthermore, Wife's non-marital assets far exceed Husband's. Before the final order, Husband's non-marital net worth was $23,514 while Wife's was $240,918. After the family court's distribution and eventual sale of the marital home, Husband's net worth is projected to be $185,779 while Wife's will be $404,160. As discussed below, we reverse the denial of alimony to Wife. The family court's 50/50 division was fair. This was not either party's first marriage, and it lasted over ten years. Both parties have reached ages where earning potential traditionally declines. Considering the statutory factors, we find the family court was well within its discretion in ordering an even split of the fruits of their economic partnership. We therefore affirm the family court's equitable division.

**B.**

Wife argues the family court erred by failing to award her alimony. She contends Husband has a far greater earning capacity, and the family court erred in finding she is able to work. She also asserts the family court erred in computing Husband's income and ignored Husband's misconduct.[4]

---

[3] As to Wife's claim for credit for paying the landscaping and decreasing the mortgage balance while the divorce was pending, we note Husband indirectly contributed to these payments as he was paying Wife $3,125 per month in temporary alimony and paying the second mortgage while she was living in the marital home.

[4] Wife further contends the family court erred by failing to reserve its ruling on alimony until after her Social Security disability application was completed; however, this argument is unpreserved for our review because Wife did not raise it to the family court. *See Buist*, 410 S.C. at 574, 766 S.E.2d at 383 ("It is well settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved." (quoting *Pye v. Estate of Fox*, 369 S.C. 555, 564, 633 S.E.2d 505, 510 (2006))).

"Alimony is a substitute for the support which is normally incident to the marital relationship" and is intended "to place the supported spouse, as nearly as is practical, in the position of support she enjoyed during the marriage." *Johnson*, 296 S.C. at 300, 372 S.E.2d at 113. However, "an alimony award should not serve as a disincentive for a spouse to make reasonable efforts to improve her employment potential or become self-sufficient." *Williamson v. Williamson*, 311 S.C. 47, 49, 426 S.E.2d 758, 760 (1993).

Alimony is not designed to be a reward or punishment, but a way to maintain the parties' financial equilibrium as both move forward in their separate lives. Almost every divorce negatively affects the finances of both parties. The purpose of an alimony award, in the event one is warranted, is to make the financial landing as soft as possible, not to fleece one side so the other gains a windfall, or make one party exhaust hard-earned assets to relieve what should fairly be the other's support obligation. *See Sweeney v. Sweeney*, Op. No. 5479 (S.C. Ct. App. filed Apr. 5, 2017) (Shearouse Adv. Sh. No. 15 at 17) ("It would be inequitable to require Wife to invade her only assets to support herself while Husband may save and continue to draw a substantial salary . . . ."); *Stoney*, 417 S.C. at 369, 790 S.E.2d at 44 (acknowledging alimony is neither a reward nor a punishment, but a means of maintaining the status quo); *cf. Butler v. Butler*, 385 S.C. 328, 342, 684 S.E.2d 191, 198 (Ct. App. 2009) (ruling "Wife should not be required to change investment strategies or invade her principal so Husband can terminate or further reduce his alimony payments").

We agree with Wife that the family court made erroneous factual findings in reaching its decision to deny her alimony. This amounts to an abuse of discretion requiring reversal. The family court found Wife's gross monthly income was $6,038 and Husband's was $7,871. We find both inaccurate. Wife's declared monthly income of $6,038 included $3,125 in temporary alimony, which the family court terminated in its final order. Husband's declared gross monthly income was $7,871, resulting in a yearly income of $94,452.

Based on the documentary evidence, which contradicts his financial declaration, we find Husband's actual gross monthly income was at least $8,500. Wife's monthly income was $2,913. This results in a disparity in the parties' income of $5,587 per month, rather than the $1,833 suggested by the family court's final order. Were she to undergo knee surgery and return to teaching, Wife has a demonstrated ability to earn at least $4,642 per month. Since leaving her job and buying a house in Tennessee, her financial declaration lists her monthly expenses as $4,982, and she anticipated her medical expenses may decrease once she is approved for Social

Security disability, although her expected social security disability benefit would be somewhat less than her current disability payment.

The family court also found both parties were "in fairly good physical and mental condition for their age." As of the final hearing, Wife was unemployed and receiving long-term disability benefits. Wife worked as a teacher with accommodations from her employer, but left that job voluntarily. Dr. Milner opined she was unable to teach unless allowed to sit ninety percent of the time, but we have no way of knowing if this limitation effectively takes her out of the teaching job market. Husband also has significant health issues, including diabetes, but they have not affected his earning ability. We are unclear how the family court found both parties to be in good health, but the finding was error.

After considering the statutory factors, we find an alimony award of $1,250 per month to Wife for a maximum duration of sixty months is just and equitable. *See* S.C. Code Ann. § 20-3-130(C) (2014) (enumerating the factors a court must consider in reaching a decision to award alimony); *Major v. Major*, 277 S.C. 318, 320-21, 286 S.E.2d 666, 668 (1982) (reversing the family court's denial of alimony and fashioning an appropriate award on appeal); *Holmes v. Holmes*, 399 S.C. 499, 507, 732 S.E.2d 213, 217 (Ct. App. 2012) (modifying an alimony award on appeal "[a]fter careful consideration of the facts of this case along with the statutory alimony factors"). The award shall apply retroactively to February 2, 2015, the date of divorce. In light of Wife's significant non-marital assets and the fact Husband has reached an age when earning potential traditionally declines, the award shall terminate no later than January 31, 2020. *See* S.C. Code Ann. § 20-3-130(B)(6) (2014) (allowing a court to award "[s]uch other form of spousal support, under terms and conditions as the court may consider just, as appropriate under the circumstances without limitation to grant more than one form of support"); *Patel v. Patel*, 359 S.C. 515, 531, 599 S.E.2d 114, 122 (2004) (reversing the family court's refusal to award retroactive alimony following a prior appeal and remand); *Christy v. Christy*, 317 S.C. 145, 152, 452 S.E.2d 1, 4-5 (Ct. App. 1994) (acknowledging an appellate court may direct an alimony award to apply retroactively); *C.A.H. v. L.H.*, 315 S.C. 389, 391, 434 S.E.2d 268, 269 (1993) (affirming an award of alimony pursuant to section 20-3-130(B)(6)). This alimony shall be taxable to Wife and tax deductible to Husband. The retroactive portion of this award shall be due upon the sale of the marital home or July 1, 2018, whichever occurs first.[5] The remaining alimony shall be paid monthly on the first day of the month commencing October 1, 2017.

---

[5] The arrearage amounts to $40,000, and shall not begin carrying interest until January 1, 2018, at which time it will accrue interest of 7.75% per annum. Husband's

## C.

Wife next argues the family court erred by not awarding her attorney's fees and costs. Wife notes she introduced all the evidence at trial and Husband's recalcitrance during discovery drove up her fees. In determining whether an attorney's fee should be awarded, the court should consider: (1) the party's ability to pay his/her own attorney's fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the attorney's fee on each party's standard of living. *See E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992).

We find the family court did not err in denying Wife's request for attorney's fees. Although we reverse the family court's denial of alimony, which benefits Wife, she has the ability to pay the $20,090 balance owed to her attorney. The Murphys' respective financial conditions also do not warrant an award of fees. Taking Wife's alimony award into account, Husband will have a gross monthly income approximately $4,487 higher than Wife's; however, Wife's net worth will be several hundred thousand dollars higher than Husband's. Requiring Wife to pay her own attorney's fees will minimally impact her standard of living given her assets.

## D.

Wife argues the family court erred by failing to grant her a divorce on the ground of physical cruelty and instead granting a divorce on the ground of one year's continuous separation. She asserts that the family court erred in finding she amended her pleadings at trial.

"It is well settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved." *Buist*, 410 S.C. at 574, 766 S.E.2d at 383 (quoting *Pye*, 369 S.C. at 564, 633 S.E.2d at 510). "While 'a party is not required to use the exact name of a legal doctrine in order to preserve the issue,' the party nonetheless must be sufficiently clear in framing his objection so as to draw the court's attention to the precise nature of the alleged error." *Id.* at 574-75, 766 S.E.2d at 383-84 (citations omitted) (quoting *Herron v. Century BMW*, 395 S.C. 461, 466, 719 S.E.2d 640, 642 (2011)). "If the party is not reasonably clear in his objection to the perceived error, he waives his right to

alimony obligation shall forever terminate in the event of either party's death or Wife's remarriage.

challenge the erroneous ruling on appeal." *Id.* at 575, 766 S.E.2d at 384. "[An] unchallenged ruling, 'right or wrong, is the law of the case and requires affirmance.'" *Lindsay v. Lindsay*, 328 S.C. 329, 338, 491 S.E.2d 583, 588 (Ct. App. 1997) (quoting *Buckner v. Preferred Mut. Ins. Co.*, 255 S.C. 159, 161, 177 S.E.2d 544, 544 (1970)).

Wife's assertion that she never pled separation as a ground for divorce is unpreserved. Although Wife argued in her motion for reconsideration that the family court should have granted a divorce on the ground of physical cruelty, she did not specifically challenge the family court's finding that she amended her pleading to allege a cause of action for divorce on the ground of continuous separation. Accordingly, the family court's finding is the law of the case and Wife cannot argue on appeal that the family court erred in granting her a divorce on an alternate ground. Because the parties were continuously separated from February 2013 until the August 2014 final hearing, the family court's grant of divorce on this ground is supported by the evidence and affirmed.[6]

## III.

The order of the family court is therefore

**AFFIRMED IN PART AND REVERSED IN PART.**

**GEATHERS, MCDONALD, and HILL, JJ., concur.**

---

[6] Assuming *arguendo* the record supports physical cruelty as an additional ground for divorce, we decline to disturb the family court's ruling on this issue. *See Mick-Skaggs v. Skaggs*, 411 S.C. 94, 101, 766 S.E.2d 870, 873 (Ct. App. 2014) ("We agree Wife presented sufficient evidence to establish Husband's adultery, but we find the family court acted within its discretion in awarding the parties a no-fault divorce."); *id.* at 102, 766 S.E.2d at 874 ("[B]ecause the granting of a divorce to Wife on the ground of adultery would not have dissolved the marriage any more completely, we need not alter the family court's decision on this issue."); *see also Miteva v. Robinson*, 418 S.C. 447, 455-56, 792 S.E.2d 920, 924 (Ct. App. 2016) (accord).